### JONES *against* CLARK and STEWART.

IN ERROR, to the Court of Common Pleas, or Mayor's Court of *Albany.*

The defendants in error brought an action of *assumpsit*

A tenant of a mortgagor in possession, after the mortgage has become forfeited, during the continuance of the lease from the mortgagor, may *attorn* to, and take a lease from the mortgagee ; and in an action brought against him by the mortgagor, for rent under his lease, he may set up such attornment as a legal defence.

One of two lessees, after the lease has expired, is a competent witness to show that he had no beneficial interest in the lease, but joined in the execution of it, merely as a surety for the payment of the rent by the co-lessee.

against the plaintiff in error, in the Court below, to recover one quarter's rent of a house and lot, formerly owned by *Gilbert Stewart*, due *August* 1, 1821. The defendant pleaded the general issue. At the trial, the plaintiffs gave in evidence a written lease of the premises, from them to the defendant and *Maltby Howel*, for one year, ending *May* 1, 1821, for the rent of 400 dollars, payable quarterly.

*M. Howel*, a witness for the plaintiff, testified, that the defendant took possession of the premises, under the said lease, at its commencement, on the first of *May*, 1820, and has since continued in occupation thereof. The witness, in answer to a question, which was objected to by the defendant's counsel, but allowed by the Court, and the point reserved, said, that he joined in the execution of the lease merely as surety for the payment of the rent by the defendant, *Jones*, and had never occupied the premises. It was proved that, at the expiration of the term, *Jones*, without the intervention or concurrence of *Howel*, agreed with *Clark*, one of the plaintiffs below, to take the premises for another year, at the same rent.

The defendant below gave in evidence a bond of *Gilbert Stewart*, to *R. Pratt* and *W. Durant*, for 6000 dollars, payable on the 4th of *February*, 1821, and a mortgage to them of the premises, dated *February* 4, 1819, duly recorded; and, also, a lease from *Pratt* and *Durant*, to the defendant, of the premises in question, dated *February* 7, 1821, for one year, commencing *May* 1, 1821, at the yearly rent of 400 dollars ; which lease contained a clause, by which the lessors engaged to indemnify the defendant against all claims for rent, by any other persons ; and also, a general assignment by *Gilbert Stewart*, of all his property, including the premises in question, to the plaintiffs below, dated *August*, 1819, in *trust*, for the benefit of his creditors, as specified in the assignment.

A verdict was taken by consent, for the plaintiffs below, for one quarter's rent, subject to the opinion of the Court, &c., on which a judgment was, afterwards, rendered by the Court below.

*H. Bleecker*, for the plaintiff in error. 1. There was

not sufficient evidence, in the Court below, that the defend-
ant held under the plaintiffs.

2. The testimony of *Howel* was inadmissible.

3. The important question is as to the effect of the mort-
gage. The lease was made subsequent to the mortgage;
and according to the decision of the Court, in *M'Kircher* v.
*Hawley*, (16 *Johns. Rep.* 289.) there was no privity be-
tween the defendant and the mortgagees, so that they could
distrain for rent; but it will be said, that the lease by the
assignees of *S.*, the mortgagor, was void as to the mortga-
gees; (*Birch* v. *Wright*, 1 *Term Rep.* 380.) that they,
having the legal estate in them, and, therefore, a right
to the possession, could eject the tenant. Now, why should
not the tenant of a mortgagor, liable to be put out of pos-
session at any time, be at liberty to receive a lease from the
mortgagee, having a right to the possession? If he submits
to be ejected, he loses the enjoyment of the premises, and
the mortgagor gains nothing, for he cannot compel the tenant
to pay rent after he has been ejected. The mortgagees are
entitled to the rents and profits of the mortgaged premises,
and may apply the same towards the payment of the debt.
This is for the benefit of both parties. The right claimed
by the mortgagees is founded in justice and convenience.

Then, as to the law of *attornment*, which has a strong
bearing on the question. The law is fully stated by Mr.
*Butler*, in his note to *Co. Litt.* 309. *a. Attornment* was
for the benefit of the tenant. He was not to be transferred
to a new lord without his consent. The necessity of at-
tornment was, in some measure, avoided by the statute of
*uses*, and the statute of *wills;* and its necessity and efficacy
were almost wholly taken away by the stat. of 4 & 5 *Anne,*
c. 16., and 11 *Geo.* II. c. 19. The former (see 1 *N. R.
L.* 525. sess. 36. ch. 56. s. 25.) makes all grants and con-
veyances valid, without the attornment of the tenants;
and the latter, (see 1 *N. R. L.* 443. sess. 36. ch. 63. s. 27,
28.) after reciting that landlords are turned out of the pos-
session of their estates by the attornments of tenants to stran-
gers, who claim titles to the estates, &c. declares, that all such
attornments shall be absolutely null and void, and that they
shall not affect the possession of the landlords; and it *pro-*

*vides*, among other things, that the act shall not extend to affect any attornment made to any mortgagee, after the mortgage has become forfeited.   After forfeiture, the mortgagee is not only entitled to possession, but has an absolute estate at law.   The statute supposes that the possession could be changed by attornment to a stranger claiming title ; and to prevent such a change, it makes the attornment void, except in the cases mentioned in the *proviso*, in which it permits the possession to be changed, and, consequently, makes the attornment of the tenant, in such case, equivalent to a recovery of the possession by suit at law.   This statute, then, provides for the very case in question.   It must embrace, also, the case of a lease made *subsequent* to the mortgage.   It does not embrace the case of a tenant *prior* to the mortgage ; because it was unnecessary to provide for such case, as by the statute of 4 & 5 *Anne*, such prior tenant became the tenant of a subsequent mortgagee.

It cannot be supposed that the *British* parliament, or our legislature, when these statutes were passed, concerning attornments to *strangers*, were entirely wrong in supposing that such attornments changed the possession.   For, if such an attornment did not effect a change of possession, the acts passed on the subject were nugatory.   " The tenant has no right to the reversion, and, therefore, cannot alter the disposition of it one way or the other ; but he has a right to the possession, and, therefore, can put whom he pleases into the possession of what he has in him."   ( *Gilb. Tenures*, 82. 3 *Vin. Abr.* tit. *Attornment*, p. 317.)   So, that it appears that the tenant could change the possession in the manner contemplated by the statute.

Whatever doubts may be entertained concerning the proviso in the statute of *Anne*, they cannot make the *proviso* in the statute of *George* II. nugatory ; and if the enacting clause of the latter statute is not itself perfectly nugatory, the proviso is very important.   It is not correct, then, to say, that these statutes have made attornments both unnecessary and inoperative, since the statute of *George* II. allows them to operate in the cases mentioned in the *proviso*.   (Per *Buller*, J. 1 *Term Rep.* 384.)   Nothing is better settled, than that all leases, or other interest in the land, made or

conveyed by the mortgagor subsequent to the mortgage,
though before forfeiture, are void as against the mortgagee. (1 *Powell on Mort.* 226. 1 *Term Rep.* 383.) As to him,
the tenants under such leases, or persons claiming such interests, may be considered as trespassers. Now, if such tenant is a trespasser as to the mortgagee, it must follow, that the tenant can agree to become the tenant of the mortgagee ; and then a *privity* exists between them, and the tenant becomes liable to a suit or a distress by the mortgagee for the rent. The statute of *George* II., by allowing an attornment in such case to be valid, made it, of course, valid and lawful as against the mortgagor, and those claiming under him ; and it was unnecessary to allow such attornment to be good against any other person. It will, perhaps, be said, that a Court of equity will not permit the mortgagee to make leases to the prejudice of the mortgagor's right to redeem. (1 *Powell on Mort.* 247.) But that is a rule peculiar to that Court, with which we have no concern here. It was intended to protect the right of redemption, which can be exercised in that Court only.

*Loucks,* contra. The question in this case is, whether a tenant of a mortgagor in possession, who became such subsequent to the giving of the mortgage, can, in a suit by his landlord for rent, set up, as a legal defence, that after the mortgage became forfeited, he agreed with the mortgagee to pay rent to him, notwithstanding his lease from the mortgagor had not expired ? This question turns, in a great measure, on the true meaning and import of the term *attornment.* It is defined to be the tenant's consent to his landlord's granting the estate to another person, whose tenant he agrees to be thenceforth, *by force of the grant ;* (*Litt.* b. 3. c. 10. sec. 551. *Co. Litt.* 309. *a.* 2 *Bl. Com.* 292.) and without such consent actually given during the life of the grantor, the grant, at common law, is void and inoperative. This rule, though, in some instances, done away by the statute of *Uses,* (1 *Term Rep.* 384.) continued until the statute of *Anne.* (1 *N. R. L.* 525.) By force of this statute, a grantor of lands on which he has a tenant, by making the grant, transfers the tenant to the grantee ;

and thus, by operation of law, a *privity* is instantly created between the tenant and the grantee, (1 *Term Rep.* 384.) whose tenant he thus becomes, instead of his former landlord; and he cannot be turned out of possession until his lease has expired. It was, therefore, rightly decided, in *Moss* v. *Gallimore*, (*Doug.* 279. 283.) that the grantee might, in such case, distrain for rent, having the legal title to it.

But the case of a tenant who takes his lease from the mortgagor in possession, *subsequent* to the mortgage, is very different. In such case the grant is made *before* he becomes a tenant, and, of course, his consent or attornment could not be necessary to give validity to the grant. It follows, that the statute of *Anne* has no operation in such a case, since it merely *supplies* attornment where it was required, at common law, to give effect to a grant made *pending* a tenancy.

It is clear, that a tenant of a mortgagor, becoming such *subsequent* to a mortgage, is not *transferred* to the mortgagee by the act of making the mortgage, and the statute of *Anne*. He is, therefore, a mere stranger to the mortgagee, and a trespasser; (*Woodfall's Ten. & Land.* 110.) and may be ejected after the mortgage is forfeited, without notice to quit. (*Doug.* 21. 4 *Johns. Rep.* 215.) And since there is no *privity* between the mortgagee and such tenant, he cannot be distrained upon, or sued, for rent, by the mortgagee. (*M'Kircher* v. *Hawley*, 16 *Johns. Rep.* 289.) But it is said, that *Jones*, in this case, has *attorned*, by taking a lease from the mortgagees, and thereby created a *privity*. This is begging the question: for, as has already been shown, *attornment* has no application to a person in his situation. That such a tenant cannot attorn, or, by any act of his, create a *privity*, to the prejudice of his landlord, is decided in *M'Kircher* v. *Hawley*; for as attornments might be made by parol, or implied from circumstances, or the acts of the tenant, the setting up in his plea a *distress* of his goods by the mortgagee, must have been considered as an attornment to the mortgagee, or on no other principle could he claim to be exempt from paying rent to his lessor; yet the Court overruled the plea, on demurrer, for want of a *privity* between the tenant and mortgagee. The *proviso* in

the statute of *George* II. (1 *N. R. L.* 443.) exempting certain attornments from the operation of the statute, did not create any new species of attornment, or introduce them where they could not have been before lawfully made. It merely saves such as already existed. The *proviso* was added, *ex abundanti cautela ;* and was, in truth, wholly unnecessary. It is entirely nugatory, as it saves nothing which would not have existed without it. It is not unusual to put such *provisos* in statutes. There is one of similar character in the statute of *Anne*, (1 *N. R. L.* 525.) which, as Mr. Justice *Buller* observes, (1 *Term Rep.* 385.) saves no other or greater rights than would have existed without it. And since the statute of *Anne* has rendered attornments unnecessary in all cases in which they were required at common law, or could be lawfully made, (*Doug.* 279. 1 *Term Rep.* 388.) and which statute extends to mortgages, (1 *Term Rep.* 384.) it is very correctly said by *Butler*, in his note to *Co. Litt.* 309. *a.*, that these statutes have made attornments both unnecessary and inoperative ; unnecessary, if not made where the common law required them ; and inoperative, if made where they were not required.(*a*)

A mortgagor in possession does not stand in the relation of a *tenant* to the mortgagee; (1 *Term Rep.* 382. *Doug.* 279.) and his lessee must be in the same situation. Hence it is, that a lease by the mortgagor is void as against the mortgagee; or, in other words, he can make no lease to bind the mortgagee. The mortgagee may, however, affirm the lease ; but that does not make him *landlord ;* but merely sanctions the relation between the mortgagor and his tenant, so that he cannot, in such case, eject the tenant, until the lease has expired. And in this sense are the expressions met with in the books to be understood, that a mortgagee may treat such lessee as a trespasser. (*Bac. Ab.* tit. *Mortg.* C. 16 *Johns. Rep.* 291.) An election by the mortgagee not to consider the tenant a trespasser, does not make him *his* tenant. If the tenant agrees with the mortgagee to be his tenant, that is taking a *new* lease ; it is not a transfer or continuation of the old one, as it would be in the case of a lease *anterior* to the mortgage. It is

(a) See also, *Gilb. Law of Tenures*, 4th Ed. p. 81, notes by the Editors.

NEW-YORK,
May, 1822.
JONES
v.
CLARK.

settled, that *before foreclosure,* the mortgagee cannot lease the premises so as to bind the mortgagor. (1 *Powell on Mortg.* 247, 248. *Woodfall,* 111, 9 *Mod.* 1.) The case in which this was first established, it is true, came from the Court of Chancery ; but the relative rights and obligations between mortgagor and mortgagee, are now the same at law as in equity ; and reason requires that it should be so. (1 *Caines' Cas. in Error,* 69. *Hitchcock* v. *Harrington,* 6 *Johns. Rep.* 290.) The rule is reciprocal : as the mortgagor cannot lease so as to bind the mortgagee, so the latter cannot lease, to bind the former. Besides, before foreclosure, the mortgagee has no *legal* interest, as regards third persons, in the mortgaged premises. (*Jackson* v. *Willard,* 4 *Johns. Rep.* 41.) How, then, can he grant any interest to a tenant ?

Again ; if the mortgagee could thus get into possession, without being put to his suit, the mortgagor might be deprived of his defence as to the validity of the mortgage. (*Jackson,* ex dem. *Sternbergh,* v. *Dominick,* 14 *Johns. Rep.* 435.) The editor of *Bacon's Abr.* (tit. *Mortgage,* C. *Gwillim's* ed. by *Wilson,*) says, " If a mortgagee permits the lessee (who became such subsequent to the mortgage) to enjoy his lease, the mortgagor may thenceforth be considered as a *receiver* of the rent, or, in some sort, a trustee, for the mortgagee, who may, at any time, countermand the implied authority, by giving notice to the tenant not to pay rent to the mortgagor any longer." For this he cites 6 *Atk.* 601 ; but this note does not evince the usual accuracy and discrimination of the learned editor. The authority cited contains no such doctrine. The mortgagor is not a receiver of the rent for the mortgagee, for, if he were, he would be bound to pay over the whole. (1 *Term Rep.* 383.) He receives the rent to his own use, and is only bound to pay the mortgage money : and in regard to *notice* to the tenant, not to pay any more rent to the mortgagor, this has reference only to the case of a tenant *anterior* to the mortgage, (*Ketch* v. *Hall, Doug.* 21.) for he is transferred, by the giving of the mortgage, and by the consent of all parties. The mortgagee can, in effect, countermand the receipt of the rent by the mortgagor, only by ejecting the tenant, or by a bill in

equity, (*Doug.* 21. 4 *John's Rep.* 216.) not by considering himself in the light of a *landlord.*

The defendant below, (*Jones,*) then, being under no obligation, by reason of any act of the plaintiffs below, to pay rent to the mortgagees, his obligation to pay it to the plaintiffs below continues until he is ejected under the mortgage. (*Cowp.* 242.) He cannot exonerate himself from this obligation, without the consent of his landlord; and the rule that a tenant, in an action against him for rent, cannot dispute the title of his landlord, applies in full force. (13 *Johns. Rep.* 240. 297. 489. *Peake's Ev.* 242. 244.) On the other hand, in the case of a tenant of the mortgagor, who became such *prior* to the mortgage, he may pay the rent to the mortgagee, on mere notice from him, without a breach of his obligation to his former landlord, who, by the act of making the mortgage, transfers the tenancy, and the legal rights incident to it, to the mortgagee; and this is the " attornment to a mortgagee," which is saved by the *proviso* in the statute of *Geo.* II. The taking a lease by *Jones* from the mortgagees was, therefore, an act of disloyalty, in derogation of the rights of the plaintiffs below, and fraudulent, as against them.

*Bleecker,* in reply. It is said, that the mortgagee, before a foreclosure, has no legal interest in the premises; but the case cited, (6 *Johns. Rep.* 290.) shows that the mortgagor has the legal interest, as to all others, *except the mortgagee and his representatives.* It is idle to say, that the mortgagee has not the legal interest, when it is admitted that he may, at any time, obtain possession by an action of ejectment.

Again; it is said, that the mortgagee can, in effect, countermand the payment of further rent to the mortgagor, by ejecting the tenant. Now, the agreement of the tenant to become the tenant of the mortgagee, accomplishes all that could be done by an ejectment, against which the tenant cannot defend himself. He does not prejudice the rights of others, by preferring to become a tenant to the mortgagee, rather than be turned out of possession, by an action of ejectment. As against the mortgagee, the mortgagor has no right to the premises, or to the rent. This is not the ordinary case of a

tenant disputing his landlord's title.  The title of the mort-
gagee is not hostile to that of the mortgagor.  It is the
same title.  The landlord has created an incumbrance on
the premises, and has thereby subjected the tenant to an
ejectment, which the statute of *Geo.* II. (1 *N. R. L.* 443.)
allows the tenant to avoid, by becoming the tenant of the
mortgagee.  This results from the act of the mortgagor,
not from the mere volition of the tenant.  The statute al-
lows the tenant to change his situation, not in hostility to
the rights of the mortgagor, but in accordance with them,
and to attain the objects and purposes of the incumbrance.
The tenant does not deny the title of the mortgagor ; if he
had no title, the mortgage itself would be invalid, and give
no title to the mortgagees.  " The mortgagor and mortga-
gee have but one title between them."  (Per *Buller*, J.   1
*Term Rep.* 383.)  " The defendant may show that the plain-
tiff had only a temporary interest at the time of the demise,
which has since expired ;  or that he has mortgaged the estate
to another person, who has given the defendant notice to
pay the rent to him."  (*Peake's Ev.* 245.)   Here the mort-
gagor had a right of possession, determinable by the will of
the mortgagee.  It was, in this sense, a temporary interest.
If, instead of taking a lease from the mortgagees, the tenant
had submitted to an action of ejectment, and after judgment,
and before execution of the writ of possession, he had
agreed to receive a lease from the mortgagees, would not
this have afforded him a defence against a suit by the mort-
gagor for rent ?   And where, in reason and good sense, is
the difference between the case supposed and the one now
before the Court ?

SPENCER, Ch. J., delivered the opinion of the Court.
The points made by the counsel for the plaintiff in error,
are, 1. That there was no sufficient evidence that *Jones* held
under *Clark* and *Stewart.*

2.  That *Howel* was an incompetent witness.

3. That the matters shown by the defendant below, were
a complete defence.

The first and second points may, at once, be disposed of.
There was complete evidence of the hiring of the premises,

by *Jones*, for the second year. *Howel* was a competent
witness to show that he had no beneficial interest in the ex-
pired lease, though the fact itself was no wise material.
The cause depends on the third point; and it presents this
question, whether a tenant of the mortgagor in possession,
and who became such subsequent to the giving the mort-
gage, can, in a suit by his landlord, the mortgagor, set up as
a legal defence, that after the mortgage became forfeited,
he attorned to the mortgagee, and took a lease from him,
during the continuance of the lease from the mortgagor ?
This case has probably been decided in the Court below, on
the authority of the case of *M'Kircher* v. *Hawley*, (16 *Johns.
Rep.* 289.) The principle decided in that case was this :
that a mortgagee could not distrain for rent becoming due
under a lease made by the mortgagor subsequent to giving
the mortgage, because there was no privity of estate or
contract between the mortgagee and such a tenant ; and we
held, that to enable a party to distrain for rent, he must
have a concurrent right to maintain an action for the rent ;
and if there was no privity of contract or estate, an action
could not be maintained.

When the plaintiff in error attorned to the mortgagees,
and took a lease from them, their title to enter under their
mortgage was complete ; for the day of payment having
passed, the condition was broken, and the estate of the
mortgagees was absolute at law. This case, then, presents
a very different question from the one decided in *M'Kircher*
v. *Hawley*. There, the point was, whether the mortgagee
could distrain, or, in effect, sue for the rent. Here, it is,
whether the tenant of the mortgagor could not, by his own
act and consent, become the future tenant of the mortga-
gees, without any disloyalty to the mortgagor. " At com-
mon law," says Mr. *Butler*, (in note 272 to *Co. Lit.* 309.
*a.*) " attornment signified only the consent of the tenant to
the grant of the seigni ry ; or, in other words, his consent
to become the tenant of the new lord." He goes on to show
the operation of the statute of *quia emptores*, and the statute
of *uses*, and the statute of *wills ;* and observes, that the
necessity and efficacy of attornments have been almost to-
tally taken away by the statutes of 4 and 5 *Anne*, c. 16.,

and 11 *George* II. c. 19. These two statutes have been re-
enacted here. The former does not relate to this case, but
the latter has an important and decisive bearing upon it.
The 28th section of the statute concerning *distresses, rents,
and the renewal of leases,* (1 *N. R. L.* 443.) after reciting
that the possession of estates is rendered precarious by the
frequent and fraudulent practice of tenants attorning to
strangers, by which means landlords and lessors are turned
out of possession, and put to the difficulty and expense of
recovering possession by suits at law, enacts, that *every
such attornment* shall be null and void, and the possession
of the landlords or lessors shall not be deemed to be, in any
wise, changed by any such attornment; with a *proviso,*
that nothing therein contained should extend to vacate or
affect any attornment made pursuant to and in consequence
of any judgment at law, or decree or order of a Court of
equity, or made with the privity and consent of the landlord
or lessor, *or to any mortgagee, after the mortgage is become
forfeited.*

The mischief which the statute was intended to remedy,
was the attornment by tenants to strangers claiming title;
and without the *proviso,* the construction of the enacting
part of the statute would have admitted of no doubt. But
to remove every doubt, the legislature have declared who
were not strangers, and to whom the tenant might lawfully
attorn; *he may attorn to a mortgagee after the mortgage is for-
feited.* The reason of this is obvious. The mortgagee, as
between him and the mortgagor, has the right of entry, and
is entitled to the possession of the premises. If, then, the
tenant will do voluntarily what the law will coerce him to
do, yield up the possession to the mortgagee, it is not an
act injurious to the just rights of the mortgagor, nor dis-
loyal towards him. Indeed, the rights of the tenant also
require that he should be allowed to do so; for if he refuses
to attorn, he at once subjects himself to eviction, and the
payment of costs. The statute makes no difference between
a tenant to the mortgagor, who becomes so before or after
the execution of the mortgage. It applies to every tenant
of the mortgagor, without reference to the time when he
became tenant. The reason is the same in both cases, and

they are both embraced by the *proviso* of the statutes; and neither of them are within the mischiefs intended by the enacting part of the statute.

Judgment reversed, and a *venire de novo* to be awarded in the Court below.