Simers *v.* Saltus.

## SIMERS *vs.* SALTUS.

The interest of a tenant under a demise from a mortgagor, made after the execution of the mortgage, is extinguished by a foreclosure and sale. *Per* JEWETT, J

And though the tenant be not evicted, if he attorn to the purchaser, the right of the lessor to the future rents is extinguished. *Per* JEWETT, J.

So. if the tenant, on being requested by the purchaser to attorn, yield up the possession of the premises, it is equivalent to an actual eviction of the tenant, and will enable him to defend an action brought by the lessor for rent accruing subsequently.

And although the lessor assign the lease to the purchaser and consent that the rent for the residue of the term be paid to him, the tenant may notwithstanding go out of possession and refuse to pay the subsequent rents.

ERROR from the New-York common pleas. Simers sued Saltus in the court below in covenant, for the non-payment of rent due upon a demise of a house in Cherry-street, for two quarters ending the 30th of April, 1841. The plaintiff, on the 26th February, 1840, leased the premises to John Shine for one year, commencing on the first day of May ensuing, for $550 rent, payable quarterly, and the defendant executed an agreement at the foot of the lease by which, as Shine's surety, he covenanted that the rent should be duly paid. Plea, *non est factum*, with notice of the defence disclosed by the evidence.

On the trial, the lease and covenant were read in evidence. The defendant proved the following facts: The plaintiff, in the year 1834, had mortgaged the premises for $3000 to one Force, and the money being due and unpaid the latter, in 1838, filed a bill of foreclosure in chancery against the plaintiff. A decree for foreclosure and sale was entered in January, 1839, by virtue of which the premises were sold on the 18th day of September, 1840, to one P. Gleason, who received the master's deed on the 15th day of October following. Gleason showed his deed to Shine and desired him to continue in possession until the end of the year and pay the rent to him, but he refused to do so, unless Gleason would agree to lease him the premises another year, which the latter declined. Shine left the premises on the last of October—the end of the second quarter, having paid rent

up to that time, and offered the key to Gleason; but several persons to whom Shine had rented separate rooms remained in possession. It appeared that the plaintiff had assigned the lease together with the defendant's covenant, to Gleason, and that the plaintiff's attorney had informed the defendant before he left the premises that the plaintiff and Gleason had agreed that the defendant might remain in possession till the end of his term on paying the rent to Gleason. The plaintiff's counsel insisted that inasmuch as Shine had not been evicted and had not attorned to the purchaser, the defendant could not set up the outstanding title as a defence to the action. The court however held that the matters proved amounted to a defence, and directed the jury to find for the defendant. There was a verdict and judgment for the defendant, upon which the plaintiff brought error.

*C. O'Conor,* for the plaintiff in error. 1. The only covenant implied by the lease was that the lessee should have the free use and enjoyment of the premises during the term. There was no covenant of title. (*Spencer's case,* 5 *Coke,* 16, *4th Resolution , Co. Litt* 384, *a, Butler's note, No.* 332; *Woodfall's Land. ana Tenant,* 311; *Shep. Touch.* 160; 1 *Saund.* 322, *a, note* 2; *Grannis* v. *Clark,* 8 *Cowen,* 36.) 2. The covenant for quiet enjoyment cannot be broken, after the lessee has entered, by any thing short of an actual eviction. ( *Waldron* v. *McCarty,* 3 *John.* 471; *Van Slyck* v. *Kimball,* 8 *id.* 198; *Kerr* v. *Shaw,* 13 *id.* 236; *Whitbeck* v. *Cook,* 15 *id.* 483; *Vibbard* v. *Johnson,* 19 *id.* 77.) 3. A lessee cannot show that the estate of the lessor has passed from him, unless he has attorned to the alienee. (*Evertsen* v. *Sawyer,* 2 *Wend.* 507; *Balls* v. *Westwood,* 2 *Camp.* 11; *Jones* v. *Clark,* 20 *John.* 51.)

*J. L. Mason,* for the defendant in error. 1. The defendant was not estopped from showing that the estate of the lessor had expired or been extinguished subsequent to the demise. (*England* v. *Slade,* 4 *T. R.* 682; *Blake* v. *Foster,* 8 *id.* 487; *Andrew* v. *Pearce,* 4 *Bos. & Pull.* 158; *Hill* v. *Saunders,* 4 *Barn. & Cress.* 529; *Jackson* v. *Rowland,* 6 *Wend.* 666.) 2. The

assignment of the lease and covenant, by the plaintiff to Gleason, did not revive the obligation of the lessee or of the surety which was extinguished by the determination of the estate of the lessor.

*By the Court*, JEWETT, J.  I entertain no doubt but that the foreclosure of the mortgage and the sale and conveyance of the demised premises, under the decree, extinguished the title of the plaintiff, and also the right of the tenant under his lease. (*Ker shaw* v. *Thompson,* 4 *John. Ch. Rep.* 609 ; 2 *R. S.* 191, § 152.) The more important question is, whether the defendant can set up that the plaintiff's title had expired before the commencement of the period during which the rent claimed accrued, without showing an actual eviction.  It is conceded that if Shine had attorned to Gleason, after the latter had received the master's deed, that would have extinguished the plaintiff's claim to rent, and such is undoubtedly the rule.  (*Jones* v. *Clark,* 20 *John.* 51.) Attornment at common law signified only the consent of the tenant to the grant of the seignory, whereby he agreed to become the tenant of the new lord.  By our statute it is declared that the attornment of a tenant to a stranger shall be absolutely void, and shall not in any wise affect the possession of his landlord, unless made under certain circumstances, and among others where it is "pursuant to, or in consequence of, a judgment at law, or the order or decree of a court of equity." (1 *R. S.* 744, § 3.)  The reason why a tenant is permitted to attorn in such a case is plain.  The party becomes entitled by such judgment or decree, as between him and the landlord, to the possession of the premises.  If then the tenant will voluntarily do what the law will coerce him to perform—yield up the possession to the party thus entitled to it—it cannot be said that this is either an act of disloyalty or injurious to the just rights of the landlord.  The rights of the tenant in such case require that he should be allowed to do so ; for if he refuse to attorn or to surrender, he would at once subject himself to an eviction, and to the payment of costs for a contempt of the court, whose decree he should refuse to comply with, or to an action

Simers *v.* Saltus.

of ejectment by the purchaser. The right of Shine to the possession of the premises in this case, as well as the right of the plaintiff to the payment of future rent, was put an end to by the decree of the court of chancery, the sale and conveyance under it, and by the demand made by Gleason that the future rents should be paid to him. These proceedings were, I think, tantamount to an actual eviction. The tenant had a right so to regard them; and if he was unwilling to attorn and to become the tenant of Gleason, he had a right to yield up the premises to him, and thereby to terminate his tenancy and the obligation to pay the plaintiff the rent for the residue of the term.

It was insisted on the argument that nothing short of an actual eviction by Gleason would amount to a breach of the plaintiff's covenant of quiet enjoyment, or bar the action for rent. But I think it is enough if on a valid claim by a third person under title paramount, the tenant voluntarily yield up or abandon the possession. (*Greenvault* v. *Davis,* 4 *Hill,* 643; *St. John* v. *Palmer,* 5 *id.* 599.) And besides, although a tenant cannot dispute the title of his landlord so long as it remains as it was at the time the tenancy commenced, yet he may show that the title under which he entered has expired or has been extinguished. (*Jackson* v. *Rowland,* 6 *Wend.* 666.) In *Hill* v. *Saunders,* (4 *Barn. & Cress.* 529,) which was an action of covenant against a lessee for the non-payment of rent, on an indenture executed by husband and wife as lessors, where the *reddendum* and the covenant was to pay the rent to the lessors, *and the heirs of the wife,* and the action was brought by the husband to recover rent which accrued after the death of the wife, a plea that the premises were the lands of the wife, and that upon her death the plaintiff's estate terminated, and the heir of the wife became seized, and thereupon threatened to evict the defendant unless he would attorn to him, upon which he did attorn, was held good. Holroyd, J. said : " It seems to me that the plea discloses that which was equivalent to an entry by the heir; for it states that the heir threatened to evict the defendant, and that he was obliged to attorn in order to prevent it. These reasons satisfy me that the plea in question is in substance good as a bar to the

action." Littledale, J. remarked, " The defendant pleads that the wife died before the rent sought to be recovered became due, and that the plaintiff's interest then ceased. It also shows a claim of the rent by the heir, *which is tantamount* to an eviction by him, and that the defendant was not estopped from showing that the interest of the plaintiff in the premises had ceased."

The same principles were regarded as sound in *Pope* v. *Biggs*, (9 *Barn. & Cress.* 245.) It was debt for use and occupation. The defendant went into possession under a demise made after the lessor had executed a mortgage of the premises. The mortgagee subsequently gave notice to the defendant that the interest was in arrear and required him to pay the amount of such interest out of the rent, and similar sums out of future rents, until further notice; and that in default of such payment, the mortgagee would pursue such remedies as were allowed by law for recovering the same. The defendant had applied the rent in the manner required. The plaintiff contended that the defendant could not avail himself of any of these payments, because he could not plead that the mortgagor, *nil habuit in tenementis*, and consequently could not deny his right to recover the rent. Bayley, J. said, it was undoubtedly a well established rule, that a lessee could not dispute the title of his lessor, at the time of the lease, but he was at full liberty to show that the lessor's title had been put an end to. Littledale, J. observed that the notice, by force of the statute of 4*th Ann*, c. 16, operated as an attornment of the tenant, and that when the lessee attorns he becomes a tenant to the mortgagee; that a new tenancy is then created between the tenant and the mortgagee; and that all those who come in under the mortgagor are, strictly speaking, trespassers. He said that in ejectment the plaintiff might declare on the demise of the mortgagee, and the accruing rents being in the nature of mesne profits, might be recovered by the mortgagee from the day when he gave notice of the mortgage to the tenant; and that if the mortgagee might, after bringing an ejectment, recover those rents in an action for mesne profits, it was perfectly clear that he was entitled at law to receive them without bringing any ejectment. And as to the accruing rents.

he said, there had been in that case that which was equivalent to an eviction by title paramount before those rents became due, and that, he added, would be an answer to any action for rent by the mortgagor.

It is true, that by the English law a mortgagor is regarded in the nature of a tenant at will, in the strictest sense, and has no power to lease the mortgaged premises; and his lessee (but not the mortgagor) would be liable to be treated by the mortgagee as a trespasser or disseisor, or lessee, at his election. (*Powell on Mort.* 209, 210; 4 *Kent's Com.* 255, 157.) But, by our law the mortgagee is considered to have but a chattel interest, and the freehold remains in the mortgagor. (*Wilson* v. *Troup,* 2 *Conn.* 195; *Hitchcock* v. *Harrington,* 6 *John.* 290; *Runyan* v. *Mersereau,* 11 *id,* 534; *Coles* v. *Coles,* 15 *id.* 319.) And now, by 2 *R. S.* 312, § 57, no action of ejectment can be sustained by a mortgagee for the recovery of the possession of the mortgaged premises; and the mortgagor has a right to sell or lease subject to the rights of the mortgagee. If the mortgagor, subsequent to the mortgage, lease the premises, the mortgagee cannot distrain or sue for the rent, because there is no privity of contract or of estate, between the mortgagee and tenant, unless the tenant attorn to the mortgagee after the mortgage has become forfeited, which he may do. (1 *R. S.* 744, § 3.) He then becomes his tenant and is answerable to him for the rent. (*Jones* v. *Clark, supra ; Magill* v. *Hinsdale,* 6 *Conn.* 464.)

After foreclosure and sale of the mortgaged premises, in possession of a lessee of a mortgagor, under a lease subsequent to the mortgage, the lessee is considered a wrongdoer, and is not entitled to notice to quit; and against him an action of trespass will lie by the purchaser for taking and carrying away the crops. (*Lane* v. *King,* 8 *Wend.* 584.)

After Gleason acquired title by the execution of the master's deed, he could have sustained an action of ejectment against Shine unless he attorned to him with his assent, or immediately abandoned the possession of the premises; and after a recovery Gleason might have recovered of Shine the value of the accruing rents as mesne profits from the day his title became vested.

Unless the law allows a tenant, thus circumstanced, to abandon his possession, and to defend himself against an action by his lessor for the subsequent rent, without showing actual eviction, he must be exposed to the expense, loss and vexation which necessarily follow an action of ejectment or other proceedings to recover the possession of the premises.

It is argued that he could avoid this by an attornment to the purchaser. But this could not be done unless the purchaser would accept it, and he might not consent. And besides, the tenant might have a choice in his landlord, and be unwilling to become the tenant to the purchaser. Should he be compelled ? I think not. Eviction by title paramount is a good plea to an action for rent accruing after such eviction, and I think the defence here bears a strong resemblance to such plea. What has been done under the mortgage executed by the plaintiff in this case is, in my opinion, in the nature of and equivalent to an eviction by title paramount. The judgment must be affirmed.

Judgment affirmed.