## THOMPSON and MOORE *vs.* SOMERVILLE.

Any contract which may be made by a mortgagor cannot be set up by the mortgagee, or a purchaser at a foreclosure sale, against the person contracting with the mortgagor, any more than it could be set up by such contractor, against the mortgagee or the purchaser at such sale.

On the 18th of June, 1845, E. J. M. being the owner of two vacant lots, adjoining each other, and being about to build a brick house on each, entered into an agreement with E. S. M. the owner of vacant lots lying on each side of his own lots, respecting the party walls to be built between .the parties, by which it was agreed that one-half of each wall should be built on the lot of each party, and that E. S. M. should have the right at any time to use such party walls, on paying to E. J. M. the value thereof. Previous to this time, and on the 3d of May, 1845, E. J. M. had mortgaged one of his lots to the C. Ins. Co. After the agreement was made, E. J. M. erected a house on that lot, and built a party wall. Subsequently the C. Ins. Co. foreclosed the mortgage, and S. became the purchaser of the lot, at the foreclosure sale, in March 1847. In October, 1848, E. S. M. sold one of his lots to L., subject to all the covenants in the agreement above mentioned, and L. built a house on such lot, using the party wall previously built by E. J. M. In a suit by the assignees of E. J. M. against E. S. M., L. and S. to recover the value of the party wall; *Held* that the mortgage conveyed to the mortgagees no interest in E. S. M.'s lot, and no right to claim payment from E. S. M. for half of a wall to be afterwards built on his lot; and that a purchaser at a sale under the mortgage could have no greater right than the mortgagees had.

*Held also,* that S. the purchaser at the mortgage sale, was not bound by the contract respecting the party wall, and could not avail himself of it, or claim from L. the value of the wall; but that the plaintiffs, as the assignees of E. J. M., were entitled to recover the same.

On the 18th of June, 1845, E. J. Moore owned two vacant lots of land adjoining each other; each 25 by 92 feet, on the ;

south side of Seventeenth-street west of the fifth avenue. At the same time E. S. Mesier owned the vacant lots on each side of Moore's two lots. On that day they entered into an agreement, under their hands and seals, whereby they recited that Moore was about to build a brick house on each of his two lots, so that one-half of the easterly wall of the easterly house should be on his easterly lot and the other half on Mesier's adjoining lot; and also that the one half of the westerly wall of his westerly house should be on his westerly lot, and the other half on Mesier's lot, adjoining this last lot of Moore's. They then covenanted with each other and for each of their heirs, executors, administrators and assigns, that not less than four nor more than six feet off the front of each of their lots should forever be an open space or court, and be in no way built upon except for entrances, platforms, &c. And it was further covenanted that the said two walls so to be erected should, so long as they endured, be party walls between the said properties, and that Mesier, " his heirs or assigns, should have the right at any time thereafter upon the payment to Moore, his heirs or assigns, of the value of the said party walls respectively (or of such of them as he might desire to use) and not before, *to use* the said party walls respectively, or the one for which he shall have paid."

Before this agreement was made, and on the 3d of May, 1845, Moore had mortgaged the most westerly of his two lots to the Contributionship Insurance Company. After the agreement was made, and before the 3d of September, 1846, Moore erected a house on that lot, and at his own expense erected a party wall, half of it on that lot and half on Mesier's adjoining lot. Moore failed, and make a general assignment of all his property to the plaintiffs in this action, on the 3d of September, 1846. After that date, but before October 21, 1848, the Contributionship Insurance Company foreclosed the mortgage, and the lot described in it was sold to Somerville, on the foreclosure sale, in March, 1847. On the 21st of October, 1848, Mesier sold his lot adjoining Moore's westerly lot, to Ludlum, subject to all the covenants in the above agreement, and Ludlum used the party wall in building a house on the lot bought by him. The plaintiffs sued

Mesier, Ludlum and Somerville, for the value of the party wall; making Ludlum a party as the one liable to pay, and Somerville as one claiming to be entitled to the payment. Ludlum admitted his liability to pay Somerville or the plaintiffs, and paid $350, the value of his half of the party wall, into court. The referee decided that the plaintiffs were the persons entitled to recover, and that Somerville was not entitled, and that he should pay costs. Somerville appealed from the judgment entered upon this report.

*H. B. Cowles,* for the appellant.

*Thompson & Delavan,* for the respondents.

*By the Court,* MITCHELL, J. The mortgage to the insurance company described Moore's lot by metes and bounds, so as to include his lot alone, without any reference to Mesier's. Somerville has no right except such as the mortgagees had. If the mortgage conveyed no interest in Mesier's lot, and no right to claim payment from Mesier for half of a wall to be afterwards built on his lot, the purchaser under the mortgage could have no right to any such payment. No agreement made by Moore, after the mortgage was executed, could affect the mortgage. The mortgagee would not be bound by it, and could not avail himself of it. For the same reason, applicable in both cases, there would be no privity between the mortgagee and one claiming under a subsequent agreement with the mortgagor. If the mortgagor leased the property, the lessee could not insist on his lease, as against the mortgagee; whether the rent reserved were high or low. The mortgagee, or the purchaser on foreclosure under him, could say "I claim under a title paramount to and prior to yours, and there is no privity between me and you." So the purchaser, on foreclosure, could not insist on the lease, and enforce it as a contract. His remedy would be by ejectment or trespass, treating the lessee as being in unlawful possession, not as holding under a contract with which the purchaser could connect himself. Whenever a party can avail him-

self of a contract which he did not make, it is because there is a privity between him and the person making it, and that the contract passes to him, and therefore binds him, as well as the opposite party. There is no such thing, generally, as a liability by virtue of a *contract*, to one who did not make it, and who may disregard it. In this case no house was erected on Moore's lot when he mortgaged it. If the house erected by Moore did not suit the purchaser (and in the changing fashions of the day that would be not an improbable event) he could have torn it down and cut away all his half of the party wall, and left nothing to support the half on Mesier's lot. This he could do, because he was not bound by a contract made by the mortgagor, after the mortgage. And if he was at liberty thus to disregard the contract, it is because he was not a party to it; not bound by it, and had no right under it.

In *Jackson ex dem. Ferris* v. *Fuller*, (4 *John.* 215,) it was held that although the mortgagor might be entitled to notice to quit before ejectment could be brought against him by the mortgagee, yet no such notice was necessary, against one in possession who had bought the title of the mortgagor; and the reason assigned is material to this case, viz: that there was no privity between such purchaser and the mortgagee; that such purchaser was a stranger to the contract by which the mortgage was created; or it might be said that the mortgagee, claiming by title prior to the purchaser from the mortgagor, was not bound in any way to recognize that title, nor at liberty to claim its enforcement, and so there was no privity between him and the other. In *McKircher* v. *Hawley*, (16 *John.* 289,) to an action for rent the defendant pleaded that the rent had been distrained for and collected under a mortgage executed *prior* to the lease. The court held that this was no defense; that there was not such privity of estate, or contract, or right as would authorize the distress; and that there was in fact no privity of contract or estate existing between the parties, although it would be different if the lease had preceded the mortgage. And that "it would be going too far to say that the mortgagor might make leases, which the mortgagee might or might not affirm, at his election." This in

Thompson *v.* Somerville.

effect decided that a mortgagee, or a purchaser under him, could not avail himself of any contract made by the mortgagor, subsequent to the mortgage. In *Jones* v. *Clark*, (20 *John.* 51,) the court recognized the above principles, but held, consistently with them, that after the mortgage was forfeited the mortgagee could bring ejectment and turn out any tenant who came into possession subsequent to the mortgage; and that such tenant might therefore attorn to the mortgagee. This attornment could only be with the consent of the tenant, and was in effect a new contract between him and the mortgagee.

In *Simers* v. *Saltus*, (3 *Denio*, 214,) the mortgage was prior to the lease; the sale under the mortgage was in Sept. 1840, and the master's deed was delivered in October following to the purchaser, who desired the tenant to continue in possession and pay rent until the end of the year, but he refused unless he could have the lease for another year, which was declined, and he left on the last of October. It was held that he was not liable to pay rent on his covenant; although if he had remained in possession and refused to attorn, the purchaser on foreclosure could have treated him as a wrongdoer (not as a contractor) and brought ejectment against him, and then recovered, not the rents previously agreed on, but "the *value* of the accruing rents as mesne profits from the day his title became vested." That the purchaser could not be bound to accept an attornment from the tenant, nor the tenant be compelled to attorn to the purchaser.

These cases all establish the principle that any contract which may be made by the mortgagor cannot be set up by the mortgagee or the purchaser on foreclosure, against the one contracting with the mortgagor; any more than it could be set up by such contractor with the mortgagor, against the mortgagee or purchaser, on foreclosure.

This being so, the purchaser in this case was not bound by the contract as to the party wall, and cannot avail himself of it. It is not pretended that at the sale any reference was made to this contract as to the party wall. The purchaser then would see the wall erected on both lots, and would infer that each lot was entitled to its own half of the wall, and that all that he could

acquire would be a right to have a party wall half on his own lot and half on his neighbor's lot, subject to the like right in favor of his neighbor. And he could no more infer that he was to be paid for his neighbor's half of the wall than that he was to pay his neighbor for the half on his own lot. If (as is probable) the party wall is equally beneficial to each owner, each will permit the other to enjoy it as it stands, without any future charge for it.

The judgment should be affirmed with costs.

[NEW-YORK GENERAL TERM, October 3, 1853. *Edmonds, Edwards, Mitchell, Roosevelt* and *Morris,* Justices.]