CYRUS CURTISS, special receiver &c., *vs.* JONAS T. BUSH
and others.

The general rule is that there must be an eviction of the mortgagor before
he can be relieved from the mortgage on the ground of a failure of the con-
sideration of the mortgage, or of the title conveyed by the mortgagee.

It seems to have been held in all the cases, that there must be an eviction,
or something equivalent thereto, to enable a mortgagor to defend against
the mortgage, on the ground of a failure of the consideration or the title.
*Per* JOHNSON, J.

S. conveyed land to B. with a covenant against his own acts, taking back a
mortgage for the purchase money. The premises were in fact incumbered
at the time, by a judgment against S. under which they were subsequently
sold; H. becoming the purchaser at the sheriff's sale, and taking a certifi-
cate from the sheriff, which he afterwards assigned to J., who procured a
deed from the sheriff and then conveyed the premises to B. J. acted
merely as the agent of B., whose possession was not disturbed, and who
sustained no damage by reason of the judgment and the sale of the prem-
ises thereunder. *Held* that there was neither an eviction of B. the mort-
gagor, nor its equivalent; there never having been any one who could have
rightfully evicted him.

*Held, also*, that notwithstanding the time for redemption from the sale had ex-
pired, the sale had not become absolute, so as, by its own force, to extin-
guish the title derived by B. from S.; but that the extinguishment was
not effected until the sale was completed by the sheriff's deed.

THE plaintiff, as special receiver of the effects of the late
North American Trust and Banking Company, com-
menced this suit in May, 1860, for the purpose of foreclosing
a mortgage upon certain lands in the county of Monroe, ex-
ecuted by Bush the appellant, to Abraham M. Schermerhorn,
bearing date Feb. 28, 1838, for the sum of $3044, payable
with semi-annual interest on the 1st of December, 1846. At
the date of the mortgage, Schermerhorn conveyed the prem-
ises to Bush, *with covenant against his own acts*, and not
otherwise, and the mortgage was given for the purchase
money. Schermerhorn, by an instrument dated the 28th
December, 1838, recorded June 17, 1839, assigned the mort-
gage, together with the bond accompanying the same, to the
said North American Trust and Banking Company, and such
assignment was duly recorded. At the time of such convey-

Curtiss *v.* Bush.

ance and mortgage, the premises were encumbered by a judgment in favor of John Ward and others against Abraham M. Schermerhorn, for $6883.75, recorded and docketed on the 20th October, 1837. Under this judgment, various parcels of real estate other than the mortgaged premises were sold by the sheriff of Monroe county, in 1840. But there remained a large sum to be collected in order to satisfy the judgment. This fact was ascertained on motion to the court, and an order was made in 1842, directing the sheriff holding the execution to collect the sum of $1895 and interest out of any other property of the debtor. Nothing further was done on the original execution, but in August, 1847, a new execution was issued with directions to collect $2611.84, which was returned by the sheriff in November of that year, the indorsement on the writ showing that he had made by the sale of real estate the sum of $1802.63, and *nulla bona*, &c. as to the residue. At the sale under the execution last mentioned the mortgaged premises in question were "duly sold" to Hamilton Harris, for $950, and a certificate of the sale was duly filed October 21, 1847. On the 19th of November, 1851, more than four years after the date of the sheriff's certificate, and nearly three years after it had become absolute, Harris assigned it to Henry C. Ives, the consideration expressed being one dollar. Ives procured the sheriff's deed on the 10th of March, 1854, which was recorded June 13, 1854. On the 20th of May, 1854, Ives and wife conveyed the same premises to Bush. The consideration expressed in this conveyance was $100. Bush had no knowledge of the above mentioned judgment until after the sheriff's sale of the premises and the purchase by Harris. It was found by the referee that Ives, in obtaining the conveyance from Harris, acted as the agent for Bush and not for himself; that nothing was paid by Ives to Harris, and nothing by Bush to Ives for the title under the judgment; but Bush paid Ives for his services. Bush having thus possessed himself of the title under the judgment, proceeded

Curtiss *v.* Bush.

afterwards to give two mortgages upon the same premises, one to Bronson for $2500, and one to Elias Pond for $2000. These moneys were advanced npon the faith of that title. The holders of these mortgages were made parties defend- ants, and they severally answered, setting up their rights as first mortgagees, and in opposition to the mortgage sought to be foreclosed. As before stated, the assignment by Scherm- erhorn to the Trust Company, was dated Dec. 28, 1838. This transaction probably was not consummated until about the time of recording the assignment, which was June 17, 1839. Schermerhorn, it seems, was a large subscriber to the stock of the Trust and Banking Company, and covered his subscription by a mortgage of $200,000, dated May, 1839. The company having notice of the above mentioned judg- ment, retained out of the stock of Schermerhorn 86 shares, equal to $8600, as an indemnity against it. The mortgage in question of Bush to Schermerhorn, was assigned as a mere collateral to the mortgage of $200,000. Schermerhorn became insolvent and was discharged as a bankrupt in 1843. There are other facts in the case which are stated in the re- port of the referee, but not material to any question intend- ed to be raised on this appeal. The referee, in deciding the case, sustained the title obtained by Bush under the judg- ment and sheriff's sale, by adjudging that the mortgages to Bronson and Pond, given upon that title, were valid liens, prior and superior to the mortgage from Bush to Schermer- horn, to foreclose which the suit was brought. Nevertheless, as to the defendant Bush, the referee took no notice of such title, but directed judgment for the foreclosure of the mort- gage to Schermerhorn, for the sum of $4246.19 and costs of suit, subject, however, to the mortgages of Bronson and Pond. The referee, in his opinion, held the sheriff's sale and conveyance under the judgment to be unquestionably legal and valid, and on that ground he sustained the two de- rivative mortgages to Bronson and Pond; and he held fur-

ther that notice to these mortgagees of all the facts, would make no difference.

The defendants appealed from the judgment entered upon the report of the referee.

*George F. Comstock,* for the appellants.

*T. Westervelt,* for the respondent.

*By the Court,* JOHNSON, J. I am of the opinion that the referee was right in holding that the plaintiff's mortgage was not discharged, but was still a subsisting lien and incumbrance upon the premises, as against the defendant. The general rule is that there must be an eviction of the mortgagor before he can be relieved from the mortgage on the ground of a failure of the consideration of the mortgage, or of the title conveyed by the mortgagee. (*Bumpus* v. *Platner,* 1 *John. Ch.* 213. *Abbott* v. *Allen,* 2 *id.* 519. *Banks* v. *Walker,* 2 *Sand. Ch.* 344.)

But it has been repeatedly held that when the title under which the mortgagor held has been extinguished, so that he may be legally evicted, he may then either attorn to the holder of the paramount title or surrender possession to him on demand, and defend against his mortgage without actual eviction. (*Simers* v. *Saltus,* 3 *Denio,* 214. *St. John* v. *Palmer,* 5 *Hill,* 599. *Leach* v. *Bailey, decided in court of appeals in* 1857 ; *opinion by Brown, J. not reported.*) There are several cases on this subject; but I do not find one in which it has been held that there need not be an eviction, or something equivalent thereto, to enable the mortgagor to defend against the mortgage. In *Leach* v. *Bailey,* which seems to be very much relied upon by the defendant's counsel, the prior mortgage had been foreclosed in equity, and a deed given to Minott the purchaser. Bailey had then attorned to Minott, and afterwards purchased and took a deed from him. The court held that Minott being entitled

to the possession under his deed, and also under the decree of foreclosure, the eviction was complete by the attornment, or yielding possession to the purchaser.

But here, as the referee held, there has never been any one who could have rightfully evicted the defendant. Harris, the purchaser at the sheriff's sale, although he took his certificate, never obtained his deed, and until he obtained his deed, the title remained in the defendant, as it was before the sale. The assignment of the certificate to the defendant's agent, Ives, was an assignment, in effect, to the defendant himself, and the subsequent conveyance by the sheriff was of the same character. Ives could not dispossess the defendant, nor could there be any valid attornment to him. So that here was neither an eviction nor its equivalent.

It is strenuously urged by the defendant's counsel that the time for redemption from the sale having expired, the sale had become absolute, and by its own force had extinguished the title derived by the defendant from Schermerhorn. But I think the extinguishment was not effected until the sale was completed by the conveyance. Before the assignment of the sheriff's certificate the legal title might have been withdrawn from the defendant at any moment; but it was not. In short it never was withdrawn. Both titles met in the same person, and, legally speaking, there could be no extinguishment; at least, none in hostility to the defendant's just title. If it was extinguished it was done by the defendant himself, and I know of no rule by which he would be entitled to defend on that ground. If Harris had taken a sheriff's deed, as the case now stands in other respects, his right would, as it seems to me, be entirely clear. But as he did not, but only assigned to the defendant the right to demand and take one, the case falls short of any adjudged case I have been able to find, in which relief has been granted. In order to give the defendant relief, as the case now stands, all idea of eviction, as in any way essential, must be extracted from the rule.

The defendant was under no obligation, by promise, or any

Curtiss *v.* Bush.

legal duty, to pay off the judgment for the protection of his title, or of the mortgage in question. That duty rested upon the plaintiff, or those under whom he claims. And had the defendant paid any thing in the purchase of the certificate, such amount should have been deducted from the amount due on the mortgage. But as he paid nothing, there was nothing to be allowed. I do not think it in any way essential whether he had paid any thing or not, had the title vested in Harris before the purchase, because in that case there would have been a complete extinguishment of his title by the act or proceeding of another, which seems to me quite material, as the rule now stands. If the rule is to be modified, it is better that it should be done by the court of last resort.

The judgment must therefore be affirmed.

[MONROE GENERAL TERM, June 2, 1863. *E. Darwin Smith, Welles* and *Johnson,* Justices.]