HINTON et al. v. BOGART.   (No. 6798.)

(Supreme Court, Appellate Division, First Department.   February 19, 1915.)

1. LIFE ESTATES (§ 25*)—LEASE BY LIFE TENANT—TERMINATION—LIFE TEN-
   ANT'S DEATH.
     A lease executed by a life tenant terminated on her death.
     [Ed. Note.—For other cases, see Life Estates, Cent. Dig. § 47; Dec.
   Dig. § 25.*]

2. LANDLORD AND TENANT (§ 118*)—LEASE—TERMINATION—USE AND OCCU-
   PATION.
     Where tenants under a lease by the owner of a life estate continued in
   possession after termination of the lease by reason of the life tenant's
   death, they were tenants of the remainderman at will, and liable for use
   and occupation, the value of which was measured by the amount defend-
   ant agreed to pay as rent during the continuance of the lease, including
   taxes and assessments as provided therein.
     [Ed. Note.—For other cases, see Landlord and Tenant, Cent. Dig. §§ 402–
   415; Dec. Dig. § 118.*]

3. LANDLORD AND TENANT (§ 99*)—RELATION OF LANDLORD AND TENANT—
   TERMINATION—NOTICE TO QUIT—SUMMARY PROCEEDINGS TO REMOVE.
     Where the lessee of a life tenant continued in possession after the
   life tenant's death, whereupon the remainderman gave notice to quit,
   and brought summary proceedings to remove defendants from the prop-
   erty, and recovered a final order, but no warrant of removal was issued
   thereon, there was no termination of the relation of landlord and tenant
   between defendants and the remainderman, under Code Civ. Proc. § 2253,
   providing that the issuing of a warrant for the removal of a tenant from
   premises cancels the agreement for the use thereof, if any, under which
   the person removed held them, and annuls the relation of landlord and
   tenant.
     [Ed. Note.—For other cases, see Landlord and Tenant, Cent. Dig. §§ 402–
   415; Dec. Dig. § 99.*]
     Laughlin, J., dissenting.

Appeal from Trial Term, New York County.
Action by Alfred P. Hinton and others against George E. Bogart.
Judgment for defendant, and plaintiffs appeal.   Modified, and judg-
ment directed for plaintiffs.
   See, also, 79 Misc. Rep. 418, 140 N. Y. Supp. 111.
   Argued before INGRAHAM, P. J., and McLAUGHLIN, LAUGH-
LIN, DOWLING, and HOTCHKISS, JJ.

Herman S. Hertwig, of New York City, for appellants.
Herman C. Storck, of New York City, for respondent.

INGRAHAM, P. J.   The property in question was owned by one
Ellsworth, who died the 18th of January, 1873, leaving a last will
and testament by which he devised certain real property, known as
Nos. 146, 148, and 150 West Twenty-Ninth street, in the city of
New York, to his daughter Sarah Hinton for life, remainder over to
her children, who were the plaintiffs in this action.   On November
1, 1901, Sarah Hinton, the life tenant, leased the premises to defend-
ant for a term of 10 years, at a yearly rent of $1,800, and defendant
also agreed to pay all taxes and assessments that might become a lien
on said premises during the term of the lease, with an option to re-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

new for a further term of 10 years at the same rent, and on the same terms, providing, however, that defendant should notify the landlord on or before October 1, 1911. Defendant entered into possession of the property under this lease, and continued in possession up to the time of the trial of this action. Sarah Hinton, the life tenant and lessor, died January 30, 1906, whereupon plaintiffs became vested with the property. Defendant continued in occupation of said premises after the death of Sarah Hinton as tenants at will of plaintiffs, until May 1, 1910, and paid rent at the times and amounts provided for in said lease, and also paid the taxes and assessments for the years 1907, 1908, and 1909, as therein provided.

On or about March 23, 1910, plaintiffs served on defendant and the undertenants a notice to quit on or before May 1, 1910. Defendant, however, refused to surrender possession of the premises on May 1, 1910, whereupon plaintiffs commenced proceedings in the Municipal Court to recover possession of the premises, and on the 21st of June, 1910, a final order was made and entered in the said proceedings awarding possession of the premises to the plaintiffs. This was affirmed on appeal to the Appellate Term on December 8, 1910. No warrant to remove the defendant from the premises was issued, and defendant continued to hold and occupy them. Since the making of the said final order in the dispossess proceedings, defendant paid to plaintiffs $450 at the end of each quarter, from May 1, 1910, to May 1, 1913, the amount named in said lease for the rent of the said premises. The payments were made and accepted, however, without prejudice to the rights of any of the parties. Subsequent to this final order in the dispossess proceedings, defendant paid the taxes which became a lien on the premises for the year 1910, but refused to pay taxes which became a lien on the property for the years 1911 and 1912, whereupon plaintiffs, in order to release the property from the lien thereof, paid said taxes to the city of New York, and brought this action to recover from defendant the amount of such taxes for the years 1911 and 1912. The court, after finding the facts, held that no obligation existed on the defendant to pay the taxes for those years, and directed judgment dismissing the complaint; and from the judgment entered thereon plaintiffs appeal.

[1, 2] Undoubtedly by the death of the life tenant the lease by her of the property terminated, and plaintiffs, as owners of the property, became entitled to possession thereof. Defendant, however, continued in possession of the premises, and continued to pay the rent reserved by the lease and the taxes upon the property down to May 1, 1910, at which time, by the notice served upon the defendant, plaintiffs required defendant to deliver possession of the property to them. There can be no question, I think, that upon the continuance in possession of the premises, holding under the lease, they became tenants at will, and became liable for the use and occupation; the value of the use and occupation to be determined by the amount defendant agreed to pay as rent during the continuance of the lease. And this relation is stated by the defendant to have existed until May 1, 1910. By that notice plaintiff attempted to terminate the relation; but the con-

tinued possession of the defendant continued the tenancy at will, and defendant continued liable for the use and occupation of the premises. By section 220 of the Real Property Law (chapter 52 of the Laws of 1909), it is provided that the landlord may recover a reasonable compensation for the use and occupation of real property, by any person, under an agreement, not made by a deed; and a parol lease or other agreement may be used as evidence of the amount to which he is entitled.

[3] The continued possession of the property by the defendant, notwithstanding the notice served on March 23d, gave to the plaintiffs the right to continue the relation of landlord and tenant, and the defendant still continued liable for the use and occupation of the premises. The institution of summary proceedings to remove defendant from the property, and the final order entered in that proceeding, did not terminate that relation, for by section 2253 of the Code of Civil Procedure it is provided that the issuing of a warrant for the removal of a tenant from premises cancels the agreement for the use of the premises, if any, under which the person removed held them, and annuls the relation of landlord and tenant, and it is conceded that no final order was entered in that proceeding. And it seems to me clear that the service of the notice did not terminate the relation of landlord and tenant, or relieve defendant from the obligation to pay for the use and occupation of the premises subsequent to May 1, 1910, and if that relation was never terminated by the issuing of a warrant in the summary proceedings then the relation continued down to the time of the trial. It was the continued possession by the defendant, and his refusal to recognize the termination of the lease of the relation of landlord and tenant given it by the plaintiffs, that continued the relation, and not the payment of the rent accepted as the amount to be paid plaintiffs for the use and occupation of the premises, and therefore the condition under which such sum was paid quarterly to the plaintiffs; that the payment was to be "without prejudice to the rights of any of the parties" did not affect the relations in which defendant stood to the property and to the plaintiffs as landlords. Certainly defendant could not retain possession of the property and escape all obligation to pay for its use and occupation. Until the relation of landlord and tenant was actually abrogated by some act of both parties to the agreement, or by the issuing of the warrant in the dispossess proceedings, which under the Code is the only process in the dispossess proceeding which terminated the relation of landlord and tenant, that relation continued.

Defendant recognized this obligation by the continued payment of the amount reserved by the lease as rent, and also by the payment of taxes for the year 1910, which apparently he paid without any reservation. The rule that, when the lease terminated by the death of the life tenant, the defendant held over in possession of the property after the termination of the lease, this gave the plaintiffs the right to continue to treat defendant as a tenant is sustained by the authorities. In Schuyler v. Smith, 51 N. Y. 309, 10 Am. Rep. 609, the tenant held over after the termination of his lease and continued in occupation of the

premises for three weeks after the expiration of the lease, and plaintiff claimed he had the right to hold them as tenants for the whole year. This they denied, because they gave him notice before the expiration of the term that they did not intend to occupy the premises for another year. The court held that plaintiff's claim was well founded, saying:

"The law is too well settled to be disputed that, where a tenant holds over after the expiration of his term, the law will imply an agreement to hold for a year upon the terms of the prior lease. * * * And hence a tenant who has obtained possession of real estate cannot dispute the title of his landlord: and, having obtained possession from his landlord, he should not be permitted to hold over, deny his tenancy, and convert himself, at his option, into a wrongdoer. * * * The safe and just rule I believe to be the one, established by authority, that a tenant holds over the term at his peril; and the owner of the premises may treat him as a trespasser or as a tenant for another year upon the terms of the prior lease, so far as applicable."

And this case was adopted as stating the law in U. M. Realty & Imp. Co. v. Roth, 193 N. Y. 570, 86 N. E. 544. In the latter case Judge Vann, whose opinion on this question was concurred in by all the court, says:

"These facts constitute a cause of action, because the law implies from the fact of occupancy under the circumstances alleged that the defendant assented to the terms stated."

The statement in the opinion of Judge Parker in the case of Genet v. Delaware & Hudson Canal Co., 170 N. Y. 278, 63 N. E. 350, had relation only to the effect of waiver by the payment of royalties to terminate a contract, a question which is not important here, as the obligations of the defendant depend, not upon payment of rent, but upon continued holding over of the premises after the termination of the lease by death of the life tenant or by notice given to terminate the lease on May 1, 1910. It was then the option of plaintiffs, and not the defendant, as to whether defendant should continue to be a tenant or a mere trespasser, and by bringing this action plaintiffs have elected to consider defendant as tenant, and thus entitled to enforce its obligation to pay for the property, the value of this use and occupation to be determined by the former lease. If these views are correct, it follows that the plaintiffs were entitled to judgment, and the court erred in dismissing the complaint.

The conclusions of law as stated in the court below are modified accordingly, and judgment directed for the plaintiffs for the amount paid by plaintiffs for the taxes for the years 1911 and 1912, with interest and costs.

McLAUGHLIN and DOWLING, JJ., concur.

HOTCHKISS, J. I think the appeal must prevail, but I cannot reach this result by the course of reasoning adopted by the Presiding Justice. Beginning with August 4, 1910, defendant's payments to plaintiffs were accompanied by a written communication, to which plaintiffs commonly responded, and it is to this correspondence that both parties appeal as evidence of their respective rights. In a letter

from defendant's attorney to plaintiffs' attorney of August 4, 1910, they say that:

"To avoid suit against our client * * * *for use and occupation* of the premises, * * * possession of which was awarded your clients by the recent order of * * * the Municipal Court, from which order an appeal has been taken and is now pending, we hand you * * * our check for $450, which payment is made and shall be deemed to be accepted by your client without prejudice to the rights of any of the parties."

On the same day, by letter headed "Hinton v. Bogart," receipt of this check *"for use and occupation"* up to August 1st was acknowledged and accepted "without prejudice to any rights * * * of any of the parties in the above-entitled action." On November 21st defendant's attorneys remitted a further check for $450, accompanied by a letter in terms almost identical with those of their letter of August 4th, of which check plaintiffs' attorneys acknowledged receipt by letter identical in form with their former letter. On March 11, 1911, defendant's attorneys sent their check for $450, stating that it was to avoid suit, and was for "use and occupation" of the premises for the preceding quarter, possession of which had been awarded to plaintiffs by the Municipal Court, the order of which was said to have been affirmed, and that the payment was made "without prejudice to the rights of any of the parties." Receipt of this check was accepted by plaintiffs' attorneys "without prejudice to the rights of any of the parties."

It will be noticed that the previous payments had been made and accepted in terms which refer to the dispossess proceedings then pending and "without prejudice" thereto, and that, the dispossess order having been affirmed, the last payment was made and accepted simply "without prejudice" to the rights of the parties as they stood. Thereafter, and down to the commencement of this action, checks for the sum of $450 were regularly sent each quarter, and were either accompanied by a formal statement that they were sent on account of "use and occupation" and "without prejudice to the rights of the parties," or their receipt was acknowledged by plaintiffs in similar terms.

In order to avoid defendant's rights under the lease, it was not necessary that a warrant should have issued. An abandonment of the premises would have worked the same result. Gallagher v. Reilly, 10 N. Y. Supp. 536; Ash v. Purnell, 11 N. Y. Supp. 54; Boehm v. Rich, 13 Daly, 62. But actual abandonment was not necessary. It was sufficient if the parties did some act so inconsistent with the subsisting relation of landlord and tenant as to imply an agreement to surrender. As shown by Judge Werner in Gray v. Kaufman Dairy Co., 162 N. Y. 388, 394, 395, 56 N. E. 903, 904, 49 L. R. A. 580, 76 Am. St. Rep. 327:

"A surrender is implied, and so effected by operation of law within the statute, when another estate is created by the reversioner or remainderman with the assent of the termor incompatible with the existing state or term."

In the light of the fact that plaintiffs were in a position at any time to have a warrant issued to dispossess defendant, and in view of the great care taken by the parties over so long a period to see to it that all quarterly payments were made and accepted as for "use and

occupation," and their avoidance of the use of the word "rent," or the doing of any act to evidence an intent by either party to commit himself to a recognition of a continuance of the relation of landlord and tenant under the lease, I think it is clearly contrary to the evidence to hold that either intended by his acts to recognize that lease as a continuing obligation, and for this reason the principle of Schuyler v. Smith, 51 N. Y. 309, 10 Am. Rep. 609, has, as I view it, no application.

As to both parties, the payments for "use and occupation" must be deemed to have been made with intent to create some other and different estate than that evidenced by the lease. What was the new estate or relation so created? I think it was an estate by sufferance, and that because of the stipulations of the parties, as shown by their correspondence, this tenancy has never become a tenancy at will (Smith v. Littlefield, 51 N. Y. 539; Real Property Law, § 33; McAdam on Landlord & Tenant [4th Ed.] 112), and that plaintiff "may recover a reasonable compensation for the use and occupation" of the premises. Real Property Law (Consol. Laws, c. 50) § 220. Prima facie, such compensation would be the amount reserved in the lease (Id.), which includes the taxes in question. The fact that the complaint was not framed so as to claim in specific language the amount of these taxes as the remainder due on account of use and occupation, I think, is of no importance. The facts are all alleged, and from these the character, in law, of the sum expressed by the taxes follows.

LAUGHLIN, J. (dissenting). I think the judgment of the trial court was right, and that in any event this is not a case in which the judgment should be reversed and a judgment in favor of the plaintiffs substituted therefor.

The action is not for use and occupation, but for a breach of the provisions of the lease, it being alleged that the defendant failed to pay the taxes as agreed therein, and that the landlords were obliged to pay them; and the action is to reimburse them therefor. It was held by the Appellate Term, on an appeal from an order granting judgment for plaintiffs on the pleadings in a former action for the same relief, which was subsequently discontinued, that if the defendant proved the allegations of his answer, to the effect that notice was given by the landlords terminating the tenancy at will, and that this was followed by dispossess proceedings, which resulted in a final order in favor of the landlords, upon which, however, no warrant was issued, and that the defendant held over thereafter, the lease ceased to be binding, and he was under no obligation thereunder to pay the taxes, and would be liable therefor only by virtue of some new agreement, express or implied. Hinton v. Bogart, 79 Misc. Rep. 418, 140 N. Y. Supp. 111.

It is conceded in the prevailing opinions that the defendant is not liable on the lease, and that his only liability is for use and occupation; but it is contended therein that the rent reserved by the former lease and the obligation of the tenant to pay taxes thereunder are evidence of the value of the use and occupation. Undoubtedly the lease would be competent evidence of the value of the use and occupation, if that were an issue in the case; but it would not be conclusive evi-

dence on that point, and defendant might well claim that the quarterly payments he made for use and occupation "without prejudice" constituted the fair and reasonable value of his use and occupation. But, as I view it, there was no issue with respect to the value of the use and occupation presented by the pleadings or litigated upon the trial.

In the circumstances, therefore, I am of opinion that the plaintiffs are not entitled to recover in this action, which was brought and tried upon the theory that the defendant was liable for the payment of the taxes by virtue of the provisions of the lease.

I therefore vote to affirm the judgment.