In the Matter of the Accounting of JOHN J. O'DONNELL, as Executor of MICHAEL E. O'DONNELL, Deceased, Respondent.

WILLIAM K. VOORHEES GRAIN COMPANY, Appellant; GEORGE W. MATHESON et al., Respondents.

Landlord and tenant — lease of real property by life tenant for term of years with covenant of quiet enjoyment — death of life tenant before expiration of lease — compliance by tenant with notice to pay rent to remainderman until further notice — surrender by tenant of premises upon demand for increased rent and denial by new owner that she had recognized existing lease — estate of lessor liable to tenant for breach of covenant of quiet enjoyment — attornment of lessee not equivalent to revival of lease — lessor under no duty to hold over upon new terms — result of payment and receipt of rent — upon repudiation of lease by new owner lessee was free to surrender possession and stand upon his covenant — measure of damages difference between rent and value — burden on defendant to prove circumstances in mitigation of damages.

1. Where a life tenant of real property gave a lease thereof for seven years with covenant of quiet enjoyment and died less than three years thereafter, whereupon the attorney for the remainderman wrote to the lessee, stating that his client had succeeded to the title and requesting payment of all rents to her " until further notice," to which the lessee complied for six months when it was notified that beginning with the following month its rent would be at a rate double that provided in the lease, and, upon its protesting that the new owner had recognized the existing lease and had continued it in force for the residue of the term, said new owner repudiated the suggestion, upon which the lessee acquiesced and surrendered the premises to said new owner who assented to the tenant's request to be relieved from future liability for rent and resumed possession, the estate of the lessor is

liable to the tenant for damages for breach of the covenant of quiet enjoyment.

2. A covenant for quiet enjoyment can be broken only by an eviction, actual or constructive. An eviction results, however, when the occupant has submitted by valid attornment to a claim by title paramount. While the tenant has a right to attorn to the new owner upon the undisputed expiration of the particular estate under which he entered, he is under no duty to hold over upon new terms. In this case the lessee attorned to a title that was superior to that of its lessor when it paid rent to the owner of the remainder in obedience to her demand. The result was an eviction and thereby a breach of the covenant. The attornment of the lessee is not equivalent to a revival of the lease. His consent to become the tenant of the new owner is no longer necessary (Real Prop. Law, § 248), and where nothing more is shown than payment and receipt of rent, the result at common law is the creation either of a tenancy at will or at most of one from year to year.

3. Nor were payment and receipt supplemented here by declarations and circumstances sufficient to justify a finding of the prolongation of the term in accordance with the first demise. When the owner definitively repudiated the lease, and refused to confirm it by a new demise or otherwise, the lessee was no longer under a duty to the representatives of the life tenant to remain in possession under a different tenure and one precarious and doubtful but was free to surrender possession and stand upon its covenant.

4. There was no error in applying as the measure of damage the difference between rent and value.

5. There is nothing to show that the covenantee had knowledge, when it accepted the lease, of the covenantor's defect of title, even if it be assumed that such knowledge would be material. The burden is on the wrongdoer or the wrongdoer's representatives to prove the existence of circumstances tending to mitigate the damages that would normally or commonly attach to a reckless or intentional default.

*Matter of O'Donnell*, 208 App. Div. 374, reversed.

(Argued February 25, 1925; decided March 31, 1925.)

APPEAL from an order of the Appellate Division of the Supreme Court in the second judicial department, entered March 7, 1924, which reversed a decree of the Kings County Surrogate's Court directing a sale of real property of the testator to satisfy a creditor's claim and disallowed said claim.

*Charles Coleman Miller* for appellant. The covenant of quiet enjoyment was broken by the lessor. (*Williams v. Alt*, 226 N. Y. 283; *Tunick* v. *Federal Food Stores, Inc.*, 117 Misc. Rep. 329; *Hinton* v. *Bogart*, 166 App. Div. 155; *St. John* v. *Palmer*, 5 Hill, 599; *Fowler* v. *Poling*, 6 Barb. 165.) The grain company is entitled to substantial damages. (*Cowdrey* v. *Coit*, 44 N. Y. 382; *Shattuck* v. *Lamb*, 65 N. Y. 499; *Scriver* v. *Smith*, 100 N. Y. 471; *Dodds* v. *Hakes*, 114 N. Y. 260; *Chatterton* v. *Fox*, 5 Duer, 64; *Staats* v. *Executors*, 3 Caines, 111; *Pitcher* v. *Livingston*, 4 Johns. 1; *Bennett* v. *Jenkins*, 13 Johns. 50; *Baldwin* v. *Munn*, 2 Wend. 405; *Kinney* v. *Watts*, 14 Wend. 18.)

*Lynn C. Norris, James W. Redmond, Edward M. Perry* and *Michael J. Joyce* for respondents. Shortly after the death of Michael E. O'Donnell, the life tenant, and before the grain company had suffered any damage, that company and Mrs. Martin, the remainderman under the will of Ann O'Donnell, ratified and adopted the old lease between the grain company and Michael E. O'Donnell in its entirety. (*Sanders* v. *Sutlive Bros. & Co.*, 163 Iowa, 172; 187 Iowa, 300; *Austin* v. *Aherne*, 61 N. Y. 6; *Cornish* v. *Searell*, 8 B. & C. 471; *Kelley* v. *Osborn*, 172 App. Div. 6; *O'Donnell* v. *McIntyre*, 118 N. Y. 156; *Mygatt* v. *Coe*, 124 N. Y. 212; *Tunick* v. *Federal Food Stores*, 117 Misc. Rep. 329; *Hinten* v. *Bogart*, 166 App. Div. 155.) The failure of title and the termination of the lease resulting from the death of the life tenant was not a breach of the covenant of quiet enjoyment. (*Home L. Ins. Co.* v. *Sherman*, 46 N. Y. 370; *Boreel* v. *Lawton*, 90 N. Y. 293; *Met. Life Ins. Co.* v. *Childs Co.*, 230 N. Y. 285; *Mason* v. *Lenderoth*, 88 App. Div. 38; *Lynch* v. *Sauer*, 16 Misc. Rep. 1; *Callahan* v. *Goldman*, 216 Mass. 238; *Sneed* v. *Jenkins*, 8 Ired. L. [30 N. C.] 27; *Levitzky* v. *Canning*, 33 Cal. 299; *Sands* v. *Boutwell*, 26 N. Y. 224; *Bordwell* v. *Collie*, 45 N. Y. 494; *Shattuck* v. *Lamb*, 65 N. Y. 499; *Parkinson* v. *Sherman*, 74 N. Y. 88; *Schriver* v. *Smith*, 100 N. Y. 471;

*Jenks* v. *Quinn,* 137 N. Y. 223.) Mrs. Martin's demand, shortly after the life tenant's death, that the rent should be paid to her, and payment of rent to her by the grain company, did not amount to a surrender of the premises. It was not a constructive eviction. (*Hinton* v. *Bogart,* 166 N. Y. 155; *Tyson* v. *Chestnut,* 118 Ala. 387; *George* v. *Putney,* 4 Cush. 351; *Holbrook* v. *Young,* 108 Mass. 83; *Lamson* v. *Clarkson,* 113 Mass. 348; *Cassassa* v. *Smith,* 206 Mass. 69; *King* v. *Bird,* 148 Mass. 572; *Duncklee* v. *Weber,* 151 Mass. 408; *Montayne* v. *Wallahan,* 84 Ill. 355; *Ross* v. *Dysart,* 33 Penn. St. 452.) If a breach of the covenant took place, the grain company was entitled to nominal damages only, because this breach was not brought about through the fraud or fault of the lessor. (*Mack* v. *Patchin,* 42 N. Y. 167; *Cockroft* v. *N. Y. & H. R. R. R. Co.,* 69 N. Y. 201; *Northridge* v. *Moore,* 118 N. Y. 419; *Walton* v. *Meeks,* 120 N. Y. 79; *Matter of Strasburger,* 132 N. Y. 128; *Empire Realty Corp.* v. *Sayre,* 107 App. Div. 415; *Jacobs* v. *Schulte,* 153 App. Div. 693; *Kelley* v. *Dutch Church,* 2 Hill, 105; *Noyes* v. *Anderson,* 1 Duer, 343; *Campbell* v. *Bentley,* 159 N. Y. 522.)

CARDOZO, J. One Michael E. O'Donnell, the life tenant of real property in Brooklyn, made a lease with covenant of quiet enjoyment to the William K. Voorhees Grain Company for seven years from November 1, 1917, at the yearly rent of $600 payable in equal monthly installments. He died on November 17, 1920, before the seven years had expired, and with his death, the title to the property passed to his daughter, one Anna S. M. Martin, who then and at the making of the lease was the owner of the remainder in fee. The effect was the extinguishment of the estate for years (*Williams* v. *Alt,* 226 N. Y. 283). The lessee became a trespasser if there was continuance of possession " without the express consent of the person then immediately entitled " (Code

Civ. Pro. § 1664; Real Prop. Law [Cons. Laws, ch. 50], § 530).

On November 30, 1920, the attorney for the new owner wrote to the lessee stating that his client had succeeded to the title, and closing with the words: " You will therefore kindly until further notice pay all rents to Mrs. Martin." This the lessee did for six months thereafter. In May, 1921, it was notified that beginning with June first, rent must be paid at the rate of $100 a month instead of $50 as before. The attorney for the lessee protested that the owner had recognized the existing lease, and had continued it in force for the residue of the term. The owner in answer " repudiated the suggestion that she had recognized the lease " or adopted it. When June arrived, the lessee tendered its check for $50, paying at the old rate. This the owner returned, insisting that more was due. The result was that nothing was paid that month, or in the two succeeding months, July and August. On August twenty-second the lessee moved away its goods and chattels, and abandoned possession. A week later the owner sued for the unpaid rents, but at the rate of $50 only. She took the position then, as affidavits filed in connection with a bill of particulars show, that in accepting rent for six months she had created a tenancy under the statute (Real Prop. Law, § 232) that would last until the following October, but no longer. The rent so computed was paid, and the action discontinued. In the meantime, as we have seen, the tenant moved out. On September first it tendered the keys to the owner, and asked to be relieved of liability for rent thereafter. To this the owner assented, and resumed possession for herself.

The question now is whether there has been a breach of the covenant of quiet enjoyment imposing liability for damages upon the estate of the lessor. The lessee's claim, filed upon the settlement of the executor's accounts, was upheld by the surrogate, who fixed the damages at

[240 N. Y. 99]          Opinion, per CARDOZO, J.          [Mar.,

$1,900.   At the Appellate Division the order was reversed and the claim dismissed.

A covenant for quiet enjoyment " can be broken only by an eviction, actual or constructive " (*Scriver* v. *Smith*, 100 N. Y. 471, 477). An eviction results, however, when the occupant has submitted by valid attornment to a claim by title paramount (*Cowdrey* v. *Coit*, 44 N. Y. 382, 392, 393; *Whalin* v. *White*, 25 N. Y. 462, 465; *Simers* v. *Saltus*, 3 Den. 214; *Curtiss* v. *Bush*, 39 Barb. 661, 664; *Merryman* v. *Bourne*, 9 Wall. 592, 600; *King* v. *Bird*, 148 Mass. 572; Tiffany on Landlord & Tenant, 534). There is then ouster under the old title, though possession is resumed under the new one (*George* v. *Putney*, 4 Cush. 351; *Holbrook* v. *Young*, 108 Mass. 83). We do not forget, of course, that there are many circumstances in which an attornment by a lessee is a wrong to his lessor, and so of no effect between them. In general, attornment to a stranger is ineffective unless made with the consent of the lessor, or " pursuant to or in consequence of a judgment, order, or decree of a court of competent juris- diction," or " to a mortgagee, after the mortgage has become forfeited " (Real Prop. Law, § 224, re-enacting in substance 11 George II, c. 19). This does not mean, however, that a lessee is disabled from attorning to a new title where the title under which he has entered, though valid at the time of entry, has expired in the interval by its natural limitation (*Hoag* v. *Hoag*, 35 N. Y. 469, 471; *O'Donnell* v. *McIntyre*, 37 Hun, 623, 626; 118 N. Y. 156; *Lamson* v. *Clarkson*, 113 Mass. 348). At least, that must be his right where, as here, the expiration of the particular estate is not disputed, but conceded. No doubt, con- tinued possession, though merely as a tenant at will, is a fact to be considered in reduction of the damages. The lessee is under no duty, however, to hold over upon new terms (*Simers* v. *Saltus*, *supra*), and damages, even if uncertain before, may be ascertained without difficulty when possession has been abandoned. We think the

lessee did attorn to a title that was superior to that of its lessor when it paid rent to the owner of the remainder in obedience to her demand (Tiffany, *supra*, p. 183). The result was an eviction and thereby a breach of covenant unless the attornment was equivalent to a revival of the lease.

We are thus brought to a consideration of the effect of an attornment when made to title paramount. At common law the consent or attornment of the tenant was essential to a grant of the reversion (Tiffany, *supra*, § 19, p. 172; 3 Holdsworth, History of English Law, 73, 74, 199; Digby, History of Law of Real Property, p. 245). "Attornment at common law signified only the consent of the tenant to the grant of the seignory, whereby he agreed to become the tenant of the new lord " (*Simers* v. *Saltus*, *supra*, 216). This consent is necessary no longer (Real Prop. Law, § 248; cf. St. 4 Anne, ch. 16). Not only that, but the grantees of the reversion have a remedy upon most, if not all, of the covenants of the lease to the same extent as the grantor would have had if the reversion had remained in him (Real Prop. Law,. § 223). Attornment in its primary sense, as it was understood at common law, is thus an idle ceremony. The transfer of the reversion, whether with the consent of the tenant or without it, is a transfer of the lease and of its rights and obligations. There remains, however, a secondary sense in which the act of attornment is still significant to-day (Tiffany, *supra*, § 19, p. 172). Attornment may also mean the acknowledgment by a tenant that he holds under a new lord who claims by title paramount, and not by grant of the reversion or as privy to the reversioner. In such a situation, " the new tenancy thus constituted, though popularly spoken of as a continuing tenancy," is " in fact a new contract and a new demise " (*Oakley* v. *Monck*, L. R. 1 Exch. 159, 164; Tiffany, *supra*, pp. 179, 180, § 73, pp. 411, 413). Ratification of the old demise, at least in any proper sense, there obviously is none, for he who

made the demise has not assumed to act for any one except himself, and least of all for one whose claim is paramount and hostile (*Hamlin* v. *Sears*, 82 N. Y. 327, 331). It is possible, of course, to incorporate in the new demise, expressly or by implication, the provisions of the old one, including the term of its duration. Such a case was *Austin* v. *Ahearne* (61 N. Y. 6), where a lessee who had taken a lease from one of two tenants in common attorned thereafter to the other. The attornment was in writing, and in the light of all the circumstances the writing could not reasonably be interpreted as leaving the two tenants in common upon terms of inequality. There are indeed statements in the opinion that seem to go farther, but they were unnecessary to the decision, and were at once characterized as dicta. " The present case only calls for a decision as to the precise point involved as between tenants in common. What is said in this opinion concerning the general law of attornment of a tenant to strangers is referred to by way of argument and illustration " (*Austin* v. *Ahearne, supra*, at p. 21). If nothing more is shown than payment and receipt of rent, the result at common law is the creation either of a tenancy at will or at most of one from year to year (*Oakley* v. *Monck, supra; Keith* v. *Gancia & Co.*, 1904, 1 Ch. 774, 783; *Corbett* v. *Plowden*, L. R. 25 Ch. D. 678; *Doe ex dem. Chawner* v. *Boulter*, 6 A. & E. 675; *Gartside* v. *Outley*, 58 Ill. 210, 214; *Tunick* v. *Federal Food Stores, Inc.*, (App. Term) 117 Misc. Rep. 329, 331; *Hinton* v. *Bogart*, 166 App. Div. 155; Tiffany, *supra*, pp. 180, 411, 413).

The question remains whether payment and receipt are supplemented here by declarations and circumstances sufficient to justify a finding of the prolongation of the term in accordance with the first demise. We shall assume in favor of the respondents that such declarations and circumstances may sometimes be sufficient, though there is no writing to be interpreted and though the

1925.]	Opinion, per CARDOZO, J.	[240 N. Y. 99]

term is in excess of a year, the usual limit for oral leases. In so doing we pass the question by whether there is need, to avoid the operation of the Statute of Frauds, that the case be brought under some recognized head either of estoppel or of fraud, and of the equitable jurisdiction appropriate thereto. If all this be assumed in the way most favorable to the respondents, we are satisfied that the continuance of such a term may not legitimately be inferred from declarations or circumstances that are uncertain or equivocal. Such, we think, are the circumstances and declarations relied on by the respondents. The letter asking for the rents was signed by a lawyer as part of a routine demand. There is no evidence that the lawyer was empowered by his client to make a lease for a term of years, and nothing to suggest his assumption of such authority. If there had been a genuine understanding that he was binding her to that extent, we might expect something more of formality and precision. Instead, the demand appears upon its face to be provisional and temporary. The tenant is to pay the rents to Mrs. Martin " until further notice," and no longer. In all this there is little trace of a definitive election that the tenancy previously existing shall be kept alive until the end. Payments were accepted, it is true, for six months thereafter, but payments pursuant to the notice were presumably subject to its conditions, unless, it may be, after a lapse of time so great, a delay so unusual or unreasonable, as to import a new agreement. When finally the demand for higher rent was made, and was met by the lessee's suggestion that the owner had " recognized " the lease, there was prompt repudiation and disclaimer by the owner, and this in turn was followed on the part of the tenant by acquiescence and surrender.

Viewing these events in their totality, we are unable to discover in them the clear and unequivocal tokens of an intention to accept an attornment effective for a term

of years. The owner of the remainder was not in privity with the life tenant under whom the lessee had gone into possession (*Oakley* v. *Monck, supra;* Williams on Real Property [23d ed.], p. 371). As a consequence, the acceptance of an attornment or some license equivalent thereto was essential to relieve the lessee of liability as a trespasser. The effect of the attornment was to give it such relief, but only while the license continued, or at most, under the statute (Real Prop. Law, § 232), till the October following. There came a time when the owner definitively repudiated the lease, and refused to confirm it by a new demise or otherwise. Then, if not before, the lessee was no longer under a duty to the representatives of the life tenant to remain in possession under a different tenure and one precarious and doubtful, but was free to surrender possession and stand upon its covenant.

We think the surrogate did not err in applying as the measure of damage the difference between rent and value (*Pumpelly* v. *Phelps,* 40 N. Y. 59; *Mack* v. *Patchin,* 42 N. Y. 167; *Friedland* v. *Myers,* 139 N. Y. 432, 436; *Marsh* v. *Johnston,* 125 App. Div. 597; affd., 196 N. Y. 511). There is nothing to show that the covenantee had knowledge, when it accepted the lease, of the covenantor's defect of title, even if we were to assume that such knowledge would be material. The burden is on the wrongdoer or the wrongdoer's representatives to prove the existence of circumstances tending to mitigate the damages that would normally or commonly attach to a reckless or intentional default.

Other questions are in the case, but they were properly disposed of in the courts below.

The order of the Appellate Division should be reversed, and the decree of the Surrogate's Court affirmed, with costs in the Appellate Division and in this court.

HISCOCK, Ch. J., POUND, MCLAUGHLIN, CRANE, ANDREWS and LEHMAN, JJ., concur.

Order reversed, etc.