720 A.2d 671 (1998)
316 N.J. Super. 537
WORLD TRADITIONS, INC., Plaintiff,
v.
Ignatius DeBELLA and Victory Truck Stop, Inc., Defendants.
Superior Court of New Jersey, Chancery Division, Middlesex County.
Decided June 23, 1998.
*672 Elchanan I. Dulitz, Kenilworth, for plaintiff World Traditions, Inc.
Steven Kropf, Old Bridge, for defendant Victory Truck Stop, Inc., (Heilbrunn, Finkelstein, Alfonso, Goldstein and Pape).
No appearance on behalf of defendant, DeBella.
HAMLIN, P.J.Ch.
This is a reserved ruling on plaintiff, World Traditions, Inc.'s (WTI) motion for summary judgment seeking ejectment of co-defendant, Victory Truck Stop, Inc. (Victory). The court heard oral argument on May 15, 1998 and reserved decision in order to allow the parties to explore a possible amicable resolution. The matter remains unresolved. A brief review of the relevant factual and procedural history is necessary for a dispositive ruling in this foreclosure action.

Factual & Procedural History
The subject property, located at 15 Victory Circle in Sayreville, has been owned by co-defendants, Charles and Joan Lacey, husband and wife (the Laceys), since October 18, 1988. At that time the Laceys executed a mortgage/note to co-defendant, Ignatius DeBella (DeBella) in the sum of $225,000.00. The mortgage was recorded in the Middlesex County Clerk's Office, Book 3737, Page 951. On August 22, 1991, the Laceys executed a second mortgage on the premises for an unknown sum in favor of Quincy Corp., not a party to this action.
In December of 1991, Victory entered into a lease (the 1991 lease) with the Laceys. Vladimir Fishman signed the 1991 lease on behalf of Victory as its acting president. The lease created a ten (10) year term beginning September 18, 1991 and provided Victory with an option to renew for an additional six (6) years. On October 18, 1992, Victory also executed a ten (10) year lease for a small trailer office located on the property. Victory continues to operate a diesel fuel station on the premises.
In 1992, the Laceys defaulted on the mortgage and DeBella initiated a foreclosure action. On July 1, 1993, the Laceys and DeBella entered into a modification agreement of the first mortgage. The Laceys defaulted again in 1996 and DeBella filed another foreclosure action under docket number F-2170-92. A writ of execution under that docket number was entered on October 7, 1996 and a sheriff's sale was held on March 19, 1997. At the sheriff's sale, Fishman submitted a bid on behalf of Victory, but WTI was the eventual, successful bidder with the sum of $520,000.00, excluding payment of outstanding taxes. However, without prior notice to the sheriff's office or the bidders, the Laceys had filed a petition for bankruptcy on the same day as the auction sale. Upon being informed of the foreclosure sale, Judge Gindin of the U.S. Bankruptcy Court directed all parties by telephone to maintain the status quo in regard to the foreclosure. Elchanan I. Dulitz, Esq., attorney for WTI, has certified by affidavit that Judge Gindin expressly permitted WTI to "collect rents and utilize the monies to pay the tax arrearage on the property...."
On March 26, 1997, West Essex Mgmt. Corp. (WEMC), an authorized agent of WTI, *673 sent a form letter to the tenants occupying 15 Victory Circle stating that WEMC had become the new landlord and that "all contracts shall remain status quo excepting for the location of the payment of [rents]." Fishman has certified that Victory began paying rent to WTI on March 17, 1997 and that WTI has accepted all subsequent payments. It appears that both parties began to operate under some ill-defined landlord/tenant relationship as WTI requested payment of rents and Victory tendered same, the only dispute between them being WTI's alleged obligation as a landlord to pay for the utilities. The 1991 lease between the Laceys and Victory provided that "... [l]andlord will agree to pay ... taxes, insurance, utilities." Asserting its alleged rights pursuant to the 1991 lease, Victory apparently wanted WTI to assume the Lacey's obligation to pay the utility bills. Victory was forced to pay for the utilities since WTI refused to assume payments.
On June 26, 1997, the bankruptcy court entered an order providing the Laceys with two months to obtain financing to repurchase the property. The order further provided that the Lacey's failure to secure financing would reinstate and approve nunc pro tunc the sheriff's sale of March 19, 1997. When the Laceys failed to obtain financing, the bankruptcy court issued an order dated August 27, 1997, removing the Laceys from the premises and confirming WTI's ownership of the premises. On August 22, 1997, WEMC wrote a letter to Victory advising that the "monthly rental fee ... is $3465 ..." and that Victory could not deduct utility fees from the rent. Victory responded by tendering that month's rent and also forwarding a check in the amount of $643.86 for monies it had deducted for utility bills from the previous month. Victory still continues to pay the monthly rent to WTI.
Unfortunately, the procedural defects of DeBella's foreclosure action prevented discharge of the liens and mortgages on the property. Consequently, WTI filed this action to clear title. WTI now seeks summary judgment against Victory declaring the 1991 lease null and void and granting judgment for WTI's possession.

THE PARTIES' CONTENTIONS
I. Plaintiff
WTI argues that the scope of ownership interests obtained by DeBella and WTI as its successor in interest is determined by the Laceys' interests at the time the 1988 mortgage was executed. Therefore, WTI asserts that DeBella's interests were encumbered by tenancies only to the extent that DeBella's interests were so encumbered at the time when the Laceys 1988 mortgage was executed. Since DeBella's mortgage was executed and filed in 1988, prior to Victory's 1991 lease with the Laceys, WTI, as the foreclosure purchaser and successor to DeBella's interest, cannot be burdened with Victory's 1991 lease. To support its position, WTI cites several cases holding that as long as the mortgage was executed prior to the tenancy, the mortgagee, upon default, could foreclose on the leasehold and obtain an order of possession against the mortgagor's tenant. See, American-Italian B & L Ass'n. v. Liotta, 117 N.J.L. 467, 189 A. 118 (E. & A. 1937); Fidelity Union Trust Co. v. Gerber Bros. Realty, Inc., 123 N.J.Eq. 511, 199 A. 7 (Ch.1938); Guttenberg S & L v. Rivera, 85 N.J. 617, 428 A.2d 1289 (1981) (extinguishing tenant's interests in favor of mortgagee who bought the property upon mortgagor's default and foreclosure). See also, 4 American Law of Property, Section 16.91 at 169 (1952). WTI also asserts that WEMC's March 26, 1997 letter was merely a general form letter sent to all tenants pursuant to the bankruptcy court's order. Thus, WTI argues that there is no landlord relationship between WTI and Victory and that an attornment has not occurred in this case.
II. Defendant
Victory asserts that an attornment has occurred between WTI and Victory by virtue of WEMC's letter advising Victory that "all contracts shall remain status quo excepting for the location of the payment of [rents]" and Victory's subsequent tender of rents beginning March 17, 1997. Victory defines attornment as "an act of a person who holds a leasehold interest in land by which he agrees to become the tenant of a stranger who has *674 acquired the fee in the land." Although Victory contends that WTI cannot seek ejectment since Victory is now a "tenant" of WTI, Victory fails to address the issue of what its specific rights are pursuant to the alleged attornment.

ANALYSIS
Victory does not dispute that WTI, as a purchaser at the foreclosure sale, is entitled to foreclose on the property. A lease between landlord and tenant subsequent to the mortgage is subordinate to that mortgage. Guttenberg, supra, at 627, 428 A.2d 1289.[1] If this were not so, a mortgagee's security interest could be substantially impaired by subsequent, disadvantageous leases adversely affecting the value of the property. Since the mortgagee upon default can take possession as against the mortgagor, the same right exists against the mortgagor's tenant.
Thus, the mortgagee may also repudiate the lease and consider the tenant a trespasser subject to eviction by an action of ejectment. Since a bona fide purchaser at a foreclosure sale acquires the interests of the mortgagee unaffected by rights of subsequent encumbrances, WTI is entitled to repudiate Victory's lease and seek Victory's eviction from the premises. See, Chase Manhattan v. Werner, 135 N.J. 209, 225, 638 A.2d 1301 (1994) ("purchaser of the mortgaged lands at a foreclosure sale including the mortgagee succeeds ... to the estate the mortgagor had at the time of the execution of the mortgage."); Koppel v. Olaf Realty Corp., 62 N.J.Super. 103, 162 A.2d 306 (App. Div.1960) (a person who acquires title through mortgage foreclosure is regarded as purchaser from date of mortgage and acquires such right and title as mortgagor had at time of making mortgage); Old Republic Ins. Co. v. Currie, 284 N.J.Super. 571, 665 A.2d 1153 (Ch.Div.1995). Victory's only defense to WTI's right to repudiate the 1988 lease is that "an attornment has occurred and the Plaintiff may not now request an ejectment." Therefore, the dispositive issue is relatively straightforward: whether an attornment between WTI and Victory has occurred, and if so, what are Victory's rights pursuant to the attornment.
"Attornment" is an act by which a tenant acknowledges his obligation to a new landlord. Hemminger v. Klaprath, 15 N.J.Misc. 163, 164, 189 A. 363 (C.P.1937) (the word "attorn" means "[t]o turn over; to transfer to another money or goods; to assign to some particular use or service"). An attornment does not exist until the mortgagee has taken actual or constructive possession. Guttenberg S & L Assn. v. Rivera, 85 N.J. 617, 630, 428 A.2d 1289 (1981). Attornment by a tenant to a new landlord or a mortgagee requires an overt act by the tenant. Id. An attornment does not occur until a mortgagee requests the tenant to pay the rent to it and the tenant does so. Id. The acceptance of an attornment is not proven by the mere payment and receipt of rent. See, Re: O'Donnell 240 N.Y. 99, 147 N.E. 541 (1925); Holm v. C.M.P. Sheet Metal, Inc. 89 A.D.2d 229, 455 N.Y.S.2d 429, (4th Dept 1982). The proof viewed in its totality must evince clear and unequivocal tokens of an intention to accept an attornment. Id. The parties in this case cannot dispute that WTI came into constructive possession of the premises, possibly as early as March 26, 1997, and that an "attornment" occurred some time subsequent to WTI's successful bid on the property. Notwithstanding WTI's contention that the letter was sent to all tenants pursuant to Judge Gindin's order in order to satisfy "exorbitant" outstanding taxes, this court cannot construe the contents of the letter as anything other than a request for an attornment from Victory. The letter dated March 26, 1997 advises all tenants that "by way of Sheriff's sale, West Essex Management Corp. has become the Landlord of the referenced premises." The letter also demonstrates WTI's intention to have the tenants of the property attorn to WTI as the new landlord. It advises all tenants that "[u]ntil further notice, all contracts shall remain status quo excepting for the location of *675 the payment of ... rent. All rents must be sent to the address listed above on or before the first of every month, effective immediately. Payments which are received after the first of the month shall accrue interest and late fees accordingly." The letter continues by setting forth further terms for garbage clean-up and monitoring of the tenants' rental units. The letter concludes by stating that "it is [WTI's] intention to improve the property tremendously which shall benefit all parties." By advising that "all contracts shall remain status quo" and requesting payment pursuant to terms of the existing leases, there cannot be a more "overt act" or a clear intention by WTI to enter into an attornment with Victory. See, e.g., Re: O'Donnell, supra, 240 N.Y. at 99-100, 147 N.E. 541; Holm, supra, 89 A.D.2d at 232-33, 455 N.Y.S.2d 429 ("where a tenant holds under an unexpired lease subject to a mortgage, which is subsequently foreclosed, and after the sale in foreclosure free of the lease, pays rent to the purchaser, there is an attornment..."). Although plaintiff's counsel has certified that WTI requested rent from Victory pursuant to Judge Gindin's "directive" for WTI to collect rents and pay outstanding taxes, the letter makes no reference to a court order or the need to pay outstanding taxes. At the very least, WTI came into constructive possession on August 29, 1997 pursuant to the bankruptcy court's order reinstating the Sheriff Sale. Therefore, WTI's subsequent requests for rent followed by Victory's continued tender of rent created an attornment in this case.
Thus, the only remaining issue is: What are Victory's rights pursuant to the attornment? First, the court notes that absent an express contract between the new landlord and the tenant, such an attornment must be distinguished from the typical "non-disturbance and attornment agreements" entered into between mortgage lenders and commercial lessees. Those agreements create privity between the mortgagee/foreclosure purchaser and the tenants. There the tenant agrees to recognize the mortgagee as the new landlord in the event the mortgagee forecloses on the original landlord-borrower. It is an agreement to enter into a new lease after foreclosure with the terms of the lease being the same as the previous lease. To ensure that the lease will continue, a tenant can have a "non-disturbance" clause included which provides that upon any foreclosure, the lease will continue so long as the tenant is not in default on the lease. The Law of Distressed Real Estate, Baxter Dunaway, Section 7.03, Termination of Leases Entered Prior to Mortgage (1988). This court finds that the parties here did not enter into such an express written agreement.
The critical question then, is whether the parties under an attornment, absent new and definite terms, should be held to the original lease or be bound by some form of new tenancy. The New Jersey cases discussing attornment in the context of foreclosures provide some guidance for the court. Those cases generally hold that a tenant may attorn to a mortgagee or foreclosure purchaser in order to avoid ejectment and to stay in possession of the leased premises. See, e.g., Fidelity Union Trust Co. v. 75 Prospect Cooperative Apt., 131 N.J.Eq. 387, 25 A.2d 508 (Ch.1942). The payments are not based upon the lease between the mortgagor and the tenant; but prohibit the mortgagee, after default, from bringing ejectment and permit the tenant to retain possession by paying the mortgagee an agreed sum in lieu thereof. Hemminger, supra, at 164, 189 A. 363. The attornment made effective by the actual payment of rent is a matter exclusively between the tenant and the mortgagee and in many respects is a new tenancy between them. Peterpaul v. Torp, 122 N.J.L. 476, 480-81, 5 A.2d 779 (E. & A.1939). Therefore, absent a specific agreement to assume all the obligations of the original lease, the parties under its form of attornment enter into a new tenancy and thus cannot be bound by the original lease terms, especially the length of the tenancy. Other jurisdictions agree that absent a new lease providing specific terms between foreclosure purchaser and tenant, the parties are not bound by the original lease. See, 74 N.Y.JUR. Landlord & Tenant, Section 144 (1988), citing Re: O'Donnell, supra, 240 N.Y. 99, 147 N.E. 541; Holm, supra, 89 A.D.2d 229, 455 N.Y.S. 2d 429 (holding that although an attornment creates a new lease which by implication *676 incorporates the terms of the old lease, the new tenancy is either a tenancy at will, or at most, a year-to-year tenancy); see also, Mobile Estates v. Fiber Form Products, 220 Cal.App.3d. 1494, 270 Cal.Rptr. 183, (6th Dist 1990.), (holding that where tenants continue in occupancy after foreclosure sale and pay monthly rent to purchaser, a new month-to-month tenancy is created).
In the case at bar, the parties have not executed a new, formal, written agreement. However, the New Jersey Statute of Frauds specifically provides:
Writing requirements, leases
A transaction intended to create a lease of real estate for more than three years shall not be enforceable unless: a. the leased premises, the term of the lease and the identity of the lessor and the lessee are established in a writing signed by or on behalf of the party against whom enforcement is sought; or b. the real estate, the term of the lease and the identity of the lessor and the lessee are proved by clear and convincing evidence. N.J.S.A. 25:1-12.
Although WTI's March 26, 1997 letter advises that "until further notice, all contracts shall remain status quo," that letter by itself is insufficient to prove by "clear and convincing evidence" the terms of any new purported lease. The letter does not sufficiently set forth specific terms of the attornment, particularly the duration of Victory's tenancy. The letter merely requests continuance of rent payments and contains some vague language indicating that "all contracts shall remain status quo." Therefore, Victory has not satisfied the statute. Victory has not produced any other documents that memorialize terms which would extend its rights beyond a month-to-month tenancy with WTI. Pending the Laceys' efforts to obtain financing to repurchase the property and the bankruptcy court's final decision, Victory merely paid rent to WTI on a monthly basis. Accordingly, Victory's new tenancy with WTI is at best a month-to-month tenancy, subject to the provisions of N.J.S.A. 2A:18-53 (Proceedings Between Landlord and Tenant: Summary Actions for Recovery of Premises) for appropriate proceedings.
The court is aware of the somewhat anomalous situation involved in this case. An attornment by a tenant to a foreclosure purchaser incorporates, by implication, some of the terms of the original lease between the tenant and the mortgagor, especially the amount for rent payments. However, an attornment is a voluntary transaction, freely entered into by the mortgagee/purchaser and the tenant. Mortgagees and foreclosure purchasers are free to seek either an ejectment or to accept attornment from the tenant and conversely, tenants of foreclosed property are free to vacate the premises or remain in possession and attorn. See, Guttenberg, 85 N.J. at 627, 428 A.2d 1289; Stanton v. Metropolitan Lumber Co., 107 N.J.Eg. 345, 347-348, (Ch.1930). Neither party is obligated to assume any responsibilities under the terms of the original lease. In fact, parties are free to negotiate new terms, including the amount of rent payments. This ruling merely holds that this attornment, by virtue of a request for payments and tender of same on a monthly basis, absent new or additional writing to satisfy the Statute of Frauds, does not revive the terms of the original lease with its options.
NOTES
[1] This case is not covered by the Anti-Eviction Act, 2A: 18-61.1 et seq. because Victory is a commercial, not a residential, lessee.